IOWA STATE FAIRGROUNDS SECURI-
TY, State of Iowa, Appellee,

v.

IOWA CIVIL RIGHTS COMMISSION,
Appellant.

No. 66422.

Supreme Court of Iowa.

July 21, 1982.

Thomas J. Miller, Atty. Gen., and Victoria L. Herring, Asst. Atty. Gen., for appellant.

Patricia A. Shoff and Gene R. LaSuer of Davis, Hockenberg, Wine, Brown & Koehn, Des Moines, for appellee.

**McCORMICK, Justice.**

The main question here is whether the district court erred in holding that a sex discrimination decision of the Iowa Civil Rights Commission is unsupported by substantial evidence when the record is viewed as a whole, pursuant to section 17A.19(8)(f), The Code. Because we find sufficient evidentiary support for the Commission's decision, we reverse the district court.

The case arose from the termination of employment of Connie Clark from her position as security guard with petitioner Iowa State Fairgrounds Security. Clark filed a sex discrimination complaint with the commission under section 601A.6(1)(a). She asserted she was discharged for conduct that was tolerated in male employees. After an investigation and finding of probable cause, the case proceeded to hearing in accordance with the provisions of chapter 17A for contested cases. *See* § 601A.15(7). The hearing was conducted by a hearing officer. He subsequently filed a proposed decision and order holding that Clark had not met her burden to prove sex discrimination.

Clark appealed to the commission, and the commission rejected the proposed decision, found the evidence showed sex discrimination, and remanded to the hearing officer for preparation of a decision reflecting the commission's conclusions. The commission subsequently adopted the revised decision as its final decision. It ordered petitioner to cease discriminating against female employees and to pay Clark damages of $7018.84 with interest at seven percent from the date of the order.

Upon judicial review the district court said it accorded the hearing officer's decision "particular attention" because of the commission's failure to explain why it disagreed with him. The court concluded that the commission decision was not supported by substantial evidence, vacated it, and remanded the case to the commission for dismissal of the complaint. The commission then took the present appeal. As the appeal is presented, we must decide the effect of the hearing officer's decision on the substantial evidence test and determine whether the district court erred in holding that the commission decision was unsupported by substantial evidence.

**I.** *The hearing officer's decision.* In rejecting the hearing officer's decision in the present case, the commission gave reasons for its conclusion. However, it did not explain why it believed the evidence of discrimination had greater probative force than the hearing officer gave it. Petitioner contends that in this situation the hearing officer's decision is entitled to enhanced weight in the substantial evidence test. We disagree. Under chapter 17A and the cases, the hearing officer's decision is simply one factor to be considered in applying the substantial evidence test, even when the agency has made a contrary decision.

A hearing officer's decision is merely a proposed agency decision. It becomes the final agency decision "unless there is an appeal to, or review on motion of, the agency within the time provided by rule." § 17A.15(3). When reviewing a proposed decision, "the agency has all the power it would have in initially making the final decision except as it may limit the issues on notice to the parties or by rule." *Id.* Upon judicial review, the district court reviews the final agency decision, not the hearing officer's proposal. *Jackson County Public Hospital v. P.E.R.B.*, 280 N.W.2d 426, 434 (Iowa 1979).

Nothing in the statute supports giving the hearing officer's proposed decision elevated status when, as in the present case, the officer and the agency disagree. The statute gives the agency an unfettered right to find the facts in the first instance. It makes the hearing officer an adjunct of the agency rather than an independent decisionmaker.

This does not mean a disagreement on the facts between the officer and the agency may not affect the substantiality of the evidence supporting the agency decision. When the agency decision is attacked on the substantial evidence ground in section 17A.19(8)(f), the district court must examine the entire record. This includes the hearing officer's decision. § 17A.12(6)(e) and (f). The hearing officer's decision is not evidence, but his findings may affect its weight when credibility issues are involved. This was explained by the United States Supreme Court in *Universal Camera Corp. v. National Labor Relations Board,* 340 U.S. 474, 496–97, 71 S.Ct. 456, 469, 95 L.Ed. 456, 472 (1951):

> We do not require that the examiner's findings be given more weight than in reason and in the light of judicial experience they deserve. The "substantial evidence" standard is not modified in any way when the Board and its examiner disagree. We intend only to recognize that evidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case has drawn conclusions different from the Board's than when he has reached the same conclusion. The findings of the examiner are to be considered along with the consistency and inherent probability of testimony. The significance of his report, of course, depends largely on the importance of credibility in the particular case. To give it this significance does not seem to us materially more difficult than to heed the other factors which in sum determine whether evidence is "substantial."

*See Peoples Memorial Hospital v. Iowa Civil Rights Commission,* 322 N.W.2d 87 (Iowa 1982), filed separately this date.

Even when credibility is involved, the agency, not the hearing officer, is charged with the authoritative responsibility to decide what the evidence means under the governing statute. *See Penasquitos Village, Inc. v. N.L.R.B.,* 565 F.2d 1074, 1078–79 (9th Cir. 1977); *N.L.R.B. v. Miller Redwood Company,* 407 F.2d 1366, 1369 (9th

Cir. 1969). This distinction is recognized in *American Federation of Television & Radio Artists v. N.L.R.B.,* 129 U.S.App.D.C. 399, 405, 395 F.2d 622, 628 (D.C.Cir.1968), where the court recognized the expertise and experience of a hearing officer but held "the statute gives the final say, assuming support in the record, to the collegial conclusion of the Board members, who likewise have particular expertise, and also, presumptively, a judgment enhanced by the perspective of experience . . . ."

In arguing for giving the hearing officer's findings greater significance when the agency does not explain its reasons for disagreeing, petitioner relies on *Greater Boston Television Corporation v. F.C.C.,* 143 U.S. App.D.C. 383, 444 F.2d 841 (D.C.Cir.1970), *cert. denied,* 403 U.S. 923, 91 S.Ct. 2233, 29 L.Ed.2d 701 (1971), and *St. Vincent's Hospital v. Finley,* 154 N.J.Super. 24, 380 A.2d 1152 (1977). In *Greater Boston,* however, the court simply said that the agency should give "attentive consideration" to an examiner's decision, noting that "in the last analysis it is the agency's function, not the Examiner's, to make the findings of fact and select the ultimate decision, and where there is substantial evidence supporting each result it is the agency's choice that governs." 444 F.2d at 853. In *St. Vincent's Hospital,* the court criticized an agency for apparently ignoring totally the record before a hearing officer and his conclusions. *See* 380 A.2d at 1155. These cases do not support petitioner's argument.

Giving elevated status to a hearing officer's proposed decision when the agency reaches a contrary decision without explaining how it arrived at a different view of the probative force of the evidence would introduce an unwarranted complication into the substantial evidence test. We decline to take that step. At the same time, however, we note that the task of judicial review is greatly facilitated when agency decisions are fully explained.

▉ II. *Sufficiency of the evidence.* Like the district court, we must apply the substantial evidence test to the entire rec-

ord. Evidence is substantial if a reasonable mind would accept it as adequate to reach a conclusion. *City of Davenport v. P.E.R.B.*, 264 N.W.2d 307, 311 (Iowa 1978).

The parties assume we will find federal cases persuasive in selecting the analytical framework for deciding discrimination cases under the Iowa civil rights statute. This assumption is warranted by our prior decisions. *See, e.g., Foods, Inc. v. Iowa Civil Rights Commission*, 318 N.W.2d 162 (Iowa 1982); *First Judicial District Department of Correctional Services v. Iowa Civil Rights Commission*, 315 N.W.2d 83 (Iowa 1982); *Linn Co-op Oil Co. v. Quigley*, 305 N.W.2d 729 (Iowa 1981); *Cedar Rapids Community School District v. Parr*, 227 N.W.2d 486 (Iowa 1975).

The elements of a prima facie case of disparate treatment in hiring under the federal statutory counterpart are delineated in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 677 (1973). By analogy, the same burden can be met in a federal discharge case if the complainant presents substantial evidence (1) that he belongs to a group protected by the statute, (2) that he was qualified for the job from which he was discharged, (3) that, despite his qualifications, he was terminated, and (4), that, after his termination, the employer hired a person not in complainant's protected class or retained persons with comparable or lesser qualifications who are not in the protected group. *See Lujan v. State of New Mexico Health and Social Services Department*, 624 F.2d 968, 970 (10th Cir. 1980). The risk of nonpersuasion remains on the complainant throughout the proceeding. However, a prima facie case creates a "presumption" of discrimination which, if believed, will require a finding of discrimination. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089; 67 L.Ed.2d 207 (1981). An employer wishing to dispel the presumption must produce evidence showing "some legitimate, nondiscriminatory reason" for the challenged action. *McDonnell-Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 668.

The employer need not persuade the trier of fact that it was actually motivated by the proffered reason. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094, 67 L.Ed.2d at 216. The complainant then has the burden of persuading the trier of fact that the reason was merely a pretext for discrimination. Pretext can be shown through cross-examination or additional evidence. *Id.* at 256, 101 S.Ct. at 1095, 67 L.Ed.2d at 217. This determination bears on the employer's motive. The complainant has the burden of ultimately establishing that the prohibited conduct was a factor in the challenged action. *Satz v. ITT Financial Corp.*, 619 F.2d 738, 746 (8th Cir. 1980). We adopt these principles for application to disparate treatment employment discrimination cases under chapter 601A.

The evidence surrounding Clark's discharge is largely disputed. The parties do agree on several material facts. Clark began working for petitioner in April 1976 as a part-time security guard. In September she was hired as a full-time probationary employee. She was the only full-time female security guard. During her October training she worked a shift from 8:00 a. m. to 4:00 p. m. In November she was scheduled to start working other shifts. One was a shift from midnight to 8:00 a. m. Under the existing seniority system, Clark would be expected to work that shift once or twice a week. On the two occasions before November 15 that she was to work that shift, she traded shifts with other employees so she did not do so. She was scheduled to work the shift starting at midnight November 16, 1976. She had eight hours of compensatory time off coming. On November 15, she requested permission from her supervisor, patrol chief Steven Turpen, to be excused from the upcoming midnight shift, and permission was denied. When she failed to appear for work on that shift and did not have a doctor's excuse for her absence, she was fired. Prior to termination her work had been satisfactory. After she was discharged, petitioner hired another woman to replace her.

Two main areas of evidentiary dispute exist. One concerns what was said in the November 15 conversation between Clark and Turpen when she requested permission to be absent from the November 17 shift. The other concerns alleged differential treatment of male employees for comparable misconduct.

Clark testified she told Turpen she needed to take time off because her mother-in-law was scheduled for emergency brain surgery in Wisconsin, requiring her to fill in for her husband to take care of the closing of his gas station after midnight on the 16th. Clark's husband testified that this emergency had indeed occurred. Turpen, however, said it was not mentioned to him in his conversation with Clark. Clark admitted Turpen told her she could not be absent from the shift unless she was sick. Turpen said he initiated the conversation because he believed Clark did not like working the midnight shift and wanted to know if she was going to report for work as scheduled. He said she told him she would not do so because she had to work at her husband's gas station. He asserted he told her she was to report as scheduled and, if she did not, she would be terminated from her employment unless she had a doctor's excuse for her absence. Turpen acknowledged that leave was usually granted when requested because part-time employees were readily available to fill in but testified he refused Clark's request on this occasion because other employees were beginning to complain about her failure to work the midnight shift. It is undisputed that Clark worked as a part-time employee from 6:00 p. m. to 6:00 a. m. for ten consecutive nights during the 1976 fair, without apparent complaint. Clark denied that she was unwilling to work the midnight shift or that her husband objected to her doing so. Her husband said he had not objected. When Turpen was asked on cross-examination to identify any person who complained about Clark not working the midnight shift, he said he could not.

Evidence concerning misconduct and treatment of male employees was also adduced. Clark said she complained to Turpen in the November 15 conversation and on prior occasions about male employees being drunk on duty, sleeping on duty, and racing a squad car on the fairgrounds track. Petitioner admits that one full-time male employee was late for shifts and was not fired. Clark testified that on several occasions that employee failed to appear for a shift and was not disciplined. There was no evidence of any male employee failing to show up for a shift after being denied permission to be absent. There was uncontroverted evidence, however, that no male who had requested leave time with as much as eight hours notice, except possibly during the fair, ever had his request denied. There was also testimony by a former assistant chief that, except in Clark's case, compensatory time off was automatically granted.

Clark testified that the instances of misconduct by males reported by her did not result in discipline. Turpen acknowledged hearing complaints about those matters but said he would not impose discipline unless he observed the misconduct or it was verified by him or his assistant. Petitioner's written personnel policy provided that "[b]eing absent three days in a row without calling the Chief or Assistant Chief will result in termination of employment." It also required a doctor's excuse for sick leave only for absences of more than three consecutive days.

The hearing officer considered two possible bases for finding sex discrimination. After making detailed findings of fact, he found Clark established a prima facie case that Turpen discriminated against her in requiring her to work the midnight to 8:00 a. m. shift on November 17, 1976. He also found she established a prima facie case of discrimination based on the disparity between the discipline she received for failing to show up for one shift and the discipline of male employees who appeared to have committed comparable infractions.

Using the *McDonnell-Burdine* formulation, he found that petitioner articulated a legitimate nondiscriminatory reason for its action in each situation and that Clark

failed to prove these reasons were pretextual. The reason advanced by petitioner for refusing Clark's request for time off was Turpen's concern, based in part on employee complaints, that Clark was developing a pattern of avoiding the midnight shift. The reason given by petitioner for the more severe discipline of Clark was the element of insubordination based on the fact she failed to appear for duty after having her request for time off specifically denied.

Upon its review of the hearing officer's proposed decision, the minutes of the commission show the following:

> The Commission found that evidence, taken as a whole, shows the Complainant was, in fact, treated differently than male employees who received no disciplinary action on the part of the employer. Male employee's conduct was excused almost always when they didn't say anything in advance and the lady was disciplined because she did say something in advance about wanting time off that she had earned.

> The Commission decided to remand the decision of the Hearing Officer on the following 4 points: (1) to find discrimination; (2) to remand the decision of the Hearing Officer with a direction that it be remanded [sic] in accordance with the Commission decision; (3) to find discrimination; and (4) to determine damages and state reasons for rejection.

> The Commission voted unanimously to remand the decision.

The Commission entered a remand order containing this statement:

> The Commission rejects the Hearing Officer's proposed decision and finds Respondent Iowa State Fairgrounds Security, State of Iowa, did discriminate against Complainant Connie Clark. The Commission concludes that the evidence taken as a whole establishes that Respondent treated Complainant differently than male employees were treated. The Commission concludes that Complainant made a legitimate request for leave time, that Complainant had accumulated adequate leave time, that Respondent's normal policy was to automatically grant compensatory leave requests, that granting Complainant's leave would have had no adverse effect upon Respondent's ability to execute its duties, that males similarly situated to Complainant were permitted to take compensatory leave, and that refusal of Complainant's leave request had the impact of treating her differently than male employees were treated and that it constitutes discrimination under Iowa law.

The order directed the hearing officer to rewrite his decision in accordance with the commission's determination and to compute damages.

Upon remand, the hearing officer modified his conclusions of law to substitute the commission's decision for his proposed decision. He computed Clark's damages, and the commission then adopted the amended decision as its final decision in the case.

■ Thus the commission found discrimination in Turpen's refusal of Clark's request for time off rather than in the subsequent firing for alleged insubordination. Of course, the refusal of leave time set in motion the events that led to the firing. The crucial issue of fact is whether similarly situated males were granted leave time. The evidence is without serious dispute that male requests for compensatory time off were automatically granted, when sufficient notice was given. Even when males were absent without authority, substantial evidence supports the commission's inference they were excused.

The difference suggested by petitioner is that the males were not suspected of trying to avoid the midnight shift. Under the whole record, it was within the commission's prerogative to determine whether this reason was pretextual. The commission obviously believed that a male's motives for wanting time off would not be questioned. The evidence supports a conclusion their motives were not in fact questioned. The finding of pretext is also supported by the evidence of Clark's working the night shift during the 1976 fair and by Turpen's inability to name anyone who complained about her alleged avoidance of the midnight shift.

We find that the commission decision has substantial evidentiary support. The fact that an opposite result would have also been sufficiently supported does not provide a basis for upsetting the decision.

III. *Other issues.* The parties urge other contentions which inhere in the questions we have addressed. One issue raised by petitioner does not. It concerns the validity of 240 I.A.C. section 1.15 which provides that the proposed decision of a hearing officer becomes final if not reviewed within 120 days. Petitioner overlooks this time limitation in asserting that the rule is invalid because it does not allow a hearing officer's decision to become final if not reviewed. The rule implements section 17A.15(3) and does not have the defect asserted.

We have considered all of petitioner's contentions and arguments, whether specifically mentioned or not, and find them without merit. We conclude that the district court erred in reversing the commission's decision. We therefore reverse the district court.

REVERSED.