Arlene M. WING, a/k/a Arlene M. Belger, Plaintiff–Appellee/Cross–Appellant,

v.

IOWA LUTHERAN HOSPITAL, Defendant–Appellant/Cross–Appellee.

No. 87–166.

Court of Appeals of Iowa.

April 20, 1988.

John R. Phillips of Rogers, Phillips & Swanger, Des Moines, and Thomas W. Foley of Nyemaster, Goode, McLaughlin, Emery & O'Brien, Des Moines, for defendant-appellant/cross-appellee.

Douglas B. Howard of the Rex Darrah Law Office, Des Moines, for plaintiff-appellee/cross-appellant.

Heard by HAYDEN, P.J., and SACKETT and HABHAB, JJ.

HABHAB, Judge.

Plaintiff, Arlene Wing, was hired by the defendant, Iowa Lutheran Hospital, on March 2, 1956. After holding a variety of part-time and full-time clerical positions, plaintiff became the billing supervisor in the Business Office Department in 1974. She held that position until March 1981.

As a result of a reorganization plan in the Business Office Department, the plaintiff was transferred from her job classification as billing supervisor to Auxiliary Services Supervisor/Hill–Burton Charity Specialist in the Patient Accounts Department in March 1981. In July 1981 a hospital-wide reorganization was implemented. The plaintiff's job classification was then changed to simply "Hill–Burton Charity Specialist." During the time that the plain-

tiff held this classification, she was the only hospital employee so classified.

In mid–1982 the hospital began to experience a decline in its patient census that accelerated so that by December 1982 the hospital was operating at a 57 percent occupancy rate, which was the first month under 70 percent in four years. A written staff reduction policy was developed in late 1982 as a result of this situation. The decline continued throughout the following year and by December 1983 the patient occupancy rate was 46 percent. Despite trying alternative ways to cut costs, the hospital was forced to consider staff reductions.

In February 1983 the hospital determined that layoffs were necessary. A committee of hospital administrators decided on the number of job classifications that needed to be reduced throughout the hospital. They determined that it would make good economic sense to eliminate the job classification of Hill–Burton Charity Specialist. Pursuant to this decision, the hospital laid off the plaintiff.

After exhausting administrative remedies, Arlene Wing filed the present age discrimination suit against Iowa Lutheran Hospital pursuant to Iowa Code section 601A.6(1)(a), a part of the Iowa Civil Rights Act. After a bench trial, the district court concluded that Iowa Lutheran had discriminated against Wing on the basis of age in selecting her to be laid off. The district court awarded Wing back wages and attorney's fees totalling nearly $100,000. Iowa Lutheran Hospital has appealed from the district court's judgment, and Wing has cross-appealed.

The hospital contends the district court's conclusion that it discriminated against Wing on the basis of age is not supported by substantial evidence. The hospital asserts the evidence established that Wing was laid off pursuant to a hospital-wide layoff under a nondiscriminatory layoff policy which was not facially discriminatory and had no disparate impact on a protected class of employees.

In her cross-appeal, Wing contends the district court erred in several respects in computing her damages. She asserts the district court's back pay award should have taken into account pay raises she would probably have received if the layoff had not occurred. She asserts she should have been awarded "front pay" or future salary damage in lieu of reinstatement. She also asserts she should have been awarded more damages for various lost fringe benefits. In addition, Wing contends the district court should have awarded her damages for emotional distress. Finally, Wing requests attorney's fees and costs on this appeal.

Appellate review is on errors of law. The trial court's fact findings have the effect of a special verdict. *Murray v. Conrad,* 346 N.W.2d 814, 817 (Iowa 1984); Iowa R.App.P. 4. We view the evidence in the light most favorable to upholding the judgment. *Koehler v. State,* 263 N.W.2d 760, 761 (Iowa 1978). If the findings are supported by substantial evidence, we are bound by them. *Murray,* 346 N.W.2d at 817; Iowa R.App.P. 14(f)(1). "Evidence is substantial if a reasonable mind would accept it as adequate to reach a conclusion." *Iowa State Fairgrounds Security v. Iowa Civil Rights Commission,* 322 N.W.2d 293, 296 (Iowa 1982). Bearing in mind the scope of review, we must first determine whether the trial court's finding that the hospital discriminated against the plaintiff was supported by substantial evidence.

It is plaintiff's burden to first establish a prima facie case of discrimination by a preponderance of the evidence. *Woodbury County v. Iowa Civil Rights Commission,* 335 N.W.2d 161, 165 (Iowa 1983). To do this, the plaintiff must show:

(1) that he belongs to a group protected by the statute, (2) that he was qualified for the job from which he was discharged, (3) that, despite his qualifications, he was terminated, and (4) ... that, after his termination, the employer hired a person not in [plaintiff's] protected class or retained persons with comparable or lesser qualifications who are not in a protected group.

*Iowa State Fairgrounds Security,* 322 N.W.2d at 296; *Trobaugh v. Hy–Vee Food*

*Stores, Inc.*, 392 N.W.2d 154, 156 (Iowa 1986).

Once plaintiff establishes a prima facie case, the burden of going forward with evidence shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action. *Iowa State Fairgrounds Security v. Iowa Civil Rights Commission*, 322 N.W.2d 293, 296 (Iowa 1982). *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 678 (1973). But in rebutting the presumption, the employer's nondiscriminatory reason must be specific and clear enough for the employee to address and legally sufficient to justify judgment for the employer. *Crimm v. Missouri Pac. R. R.*, 750 F.2d 703, 712 (8th Cir.1984). If the employer carries this burden the presumption of discrimination drops. *Cooper v. Federal Reserve Bank*, 467 U.S. 867, 875, 104 S.Ct. 2794, 2799, 81 L.Ed.2d 718, 727 (1984); *Trobaugh*, 392 N.W.2d at 156.

Plaintiff employee must next show the employer's proffered justification for the action was pretextual. *Trobaugh*, 392 N.W.2d at 157. Plaintiff may carry this burden by "persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207, 217 (1981). Plaintiff bears the ultimate burden of persuasion of intentional discrimination and that burden never shifts to the employer. *Burdine*, 450 U.S. at 252–53, 101 S.Ct. at 1093, 67 L.Ed.2d at 215.

### I.

■ The trial court found that "the Plaintiff was discharged by the defendant due to her age and that said discharge was an unfair and discriminatory employment practice pursuant to Iowa Code section 601A.6(1)(a)." As it relates to this finding, age discrimination need only be a determining factor in the discharge of an employee, it need not be the sole determining factor.

*Duffy v. Wheeling Pittsburgh Steel Corp.*, 738 F.2d 1393, 1395 (3rd Cir.1984). As the Court in *Duffy* stated:

> In order to recover under the ADEA [Age Discrimination in Employment Act, 29 U.S.C. § 621 et. seq. (1975)], a plaintiff must prove by a preponderance of the evidence that age was "a determinative factor" in the employer's decision (citation omitted). Duffy need not prove that age was the employer's sole or exclusive consideration but must prove that "age made a difference" in that decision. (citation omitted)

*Id.* at 1395. Thus, in the case before us, if there is substantial evidence in the record to support this finding, we will defer to that decision. *Murray*, 346 N.W.2d at 817; *Koehler*, 263 N.W.2d at 261.

It is clear from the record, and the plaintiff concedes, that the defendant was confronted with a decline in its patient census and revenue in 1982 and 1983, and that economics was the initial reason for the subsequent discharges that took place. However, the fact that such circumstance exists does not preclude liability under section 601A.6(1)(a) if the employee can prove that "(1) a discriminatory reason more likely motivated the employer or (2) the employer's proffered explanation is unworthy of credence." *Duffy*, 738 F.2d at 1396.

■ But the employee cannot rely solely on termination to establish a prima facie case when an employer makes cutbacks due to economic necessity. *Holley v. Sanyo Mfg., Inc.*, 771 F.2d 1161, 1165 (8th Cir.1985). Nor is it sufficient for an employee to show only that she was the victim of a cutback in the labor force necessitated by depressed economic conditions and that the job was combined into the duties of a younger employee to meet the requirements of a prima facie case. *Sahadi v. Reynolds Chemical*, 636 F.2d 1116, 1117 (6th Cir.1980). The plaintiff must come forward with additional evidence that age was a factor in her termination. *Duffy*, 738 F.2d at 1395. Has the plaintiff met her burden? We hold she has.

## Prima Facie Case

As stated, plaintiff first had to establish that she belonged to a group protected by section 601A.6(1)(a) of the Iowa Code (Iowa Civil Rights Act).[1] *Trobaugh*, 392 N.W.2d at 156. The Iowa Supreme Court has ruled that civil rights cases brought under Chapter 601A are to be guided by federal law. *King v. Iowa Civil Rights Commission*, 334 N.W.2d 598, 601 (Iowa 1983). It was stipulated at trial that plaintiff was sixty-one years old at the time she left Lutheran's employ. Under the Federal Age Discrimination in Employment Act (A.D.E.A.), the protected age group ranges from ages forty to seventy. 29 U.S.C. § 631(a) (1982). It is clear the plaintiff belonged to the protected age group.

The plaintiff must also show that she was qualified for the job from which she was laid off. *Trobaugh*, 392 N.W.2d at 156. In a reduction-in-force situation, such as the one before us, the discharged employee will nearly always be qualified for his position. *Holley v. Sanyo Mfg., Inc.*, 771 F.2d 1161, 1165 (8th Cir.1985). Such is the case here.

The plaintiff performed various duties including: Hill–Burton Charity Specialist; helped supervise cashiers, insurance follow-up, and audit personnel; audit clerical work; insurance follow-up; cashiering; preparing reports for the billing department; corresponding between patients and agencies. The record reveals that plaintiff's qualifications for the above duties she performed were well established.

Despite these qualifications, the record shows that the plaintiff permanently lost her employment with Lutheran. This satisfies the third element of a prima facie case of age discrimination. *Trobaugh*, 392 N.W.2d at 156.

The plaintiff finally has to establish that after her termination the employer hired a person not in her protected class or retained persons with comparable or lesser qualifications who were not in the protected group. *Trobaugh*, 392 N.W.2d at 156. Kathy Hintz, age twenty-eight, took over plaintiff's responsibilities as Hill–Burton Charity Specialist at the time of Arlene's departure. Additionally, all of the other employees at Lutheran retained in the audit, clerical, cashiering, insurance follow-up, and other areas of plaintiff's expertise following her departure were also younger than plaintiff, had substantially less time on the job, and were making substantially less pay per hour than plaintiff. Therefore, the fourth element for a prima facie case of discrimination has been established. We find there is substantial evidence to support a prima facie case of age discrimination.

## Proffered Reason and Pretext

■ After the plaintiff has presented a prima facie case in a discrimination case, the employer is given the opportunity to dispel the presumption of discrimination which has attached by producing evidence that shows some legitimate, nondiscriminatory reason for the challenged action. *Trobaugh*, 392 N.W.2d at 156–57; *Iowa State Fairgrounds Security*, 322 N.W.2d at 296; *Texas Dept. of Community Affairs*, 450 U.S. at 252–53, 101 S.Ct. at 1093, 67 L.Ed. 2d at 215.

The evidence is undisputed that the hospital was confronted with a decline in its patient census and revenue in 1982 and 1983. Lutheran made a business decision that a wide-scale staff reduction was necessary. The plaintiff was laid off as part of this staff reduction. Lutheran advances the proposition that the plaintiff's position was terminated due to economic necessity. Lutheran further states, therefore, that there was no evidence that plaintiff was treated differently than the almost 300 oth-

---

**1.** Section 601A.6(1)(a) of the Iowa Code (Iowa Civil Rights Act), states in pertinent part as follows:

    1. It shall be an unfair and discriminatory practice for any:

      (a) Person to refuse to hire, accept, register, classify, or refer to employment, to discharge any employee, or to otherwise discriminate in employment against any applicant for employment or any employee because of the age, race, creed, color, sex, national origin, religion or disability of such applicant or employee, unless based upon the nature of the occupation. . . .

er employees who were laid off at the hospital in 1983.

However, there is substantial evidence in the record from which the trial court could find that plaintiff, as Hill–Burton Charity Specialist, performed a great many duties and that none of those duties ceased to exist upon her termination, including the Hill–Burton duties. The trial court could also find that younger employees, with less experience, were retained to perform those duties.

In this respect, the trial court did state: Had the plaintiff's job classification title reflected the actual duties she performed more than 75 percent of the time, her seniority would have entitled her to still be employed there today. The layoff policy adopted eliminated any opportunity for the plaintiff to bump other employees performing the same job as she. Further, it eliminated any opportunity for her to be called back to work.

At the time of her termination Arlene was earning one and one-half to two times the average pay in the patient accounts department. Additionally, she was the oldest employee in patient accounts and the only employee to be terminated from patient accounts.

Economic savings derived from discharging older employees cannot serve as a legitimate justification under the A.D.E.A. *Leftwich v. Harris–Stowe State College,* 702 F.2d 686, 692 (8th Cir.1983). Because of the close relationship between tenure status and age, a termination of higher paid employees, such as the plaintiff, is evidence of discriminatory treatment where older workers, through years of satisfactory service, have built up higher salaries than their younger counterparts. *Id.* at 691. Based on this theory of recovery, a supportable inference of intent to discriminate can be drawn in plaintiff's case where she was the oldest and only employee in the patient accounts department to be let go.

We conclude the the trial court could find that the plaintiff showed the following in reference to pretext: (1) that similarly situated employees were treated differently; (2) that plaintiff's relevant abilities and potential were at least equal, if not superior, to those persons retained; and (3) where the plaintiff was the only one in patient accounts let go, and where she, along with four others, were all over the age of forty that were let go in the financial area, this provides substantial evidence of discrimination. We find that age was a factor in plaintiff's termination.

## II.

Defendant contends that an employer cannot be found to have unlawfully discriminated against an individual employee based on a hospital-wide layoff under a nondiscriminatory layoff policy that was not challenged as being facially discriminatory or having a disparate impact on a protected class of employees.

Under the "disparate impact" theory, a plaintiff is initially required to prove, most commonly through statistics, that an employer's facially neutral rule or policy has a disparate impact upon the employment opportunities of a protected class of persons. *Massarsky v. General Motors Corp.,* 706 F.2d 111, 120 (3d Cir.1983), *cert. denied,* 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983); *Leftwich v. Harris–Stowe State College,* 702 F.2d 686, 690 (8th Cir.1983); *Allison v. Western Union Tel. Co.,* 680 F.2d 1318, 1321 (11th Cir.1982); *Geller v. Markham,* 635 F.2d 1027, 1032 (2d Cir. 1980), *cert. denied,* 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981).

Once disparate impact is demonstrated, the burden of going forward shifts to the employer which must establish that the rule or policy under challenge is mandated by "business necessity." *Massarsky,* 706 F.2d at 120; *Leftwich,* 702 F.2d at 690; *Allison,* 680 F.2d at 1321; *Geller,* 635 F.2d at 1032. If the employer establishes that the challenged risk or policy is required by "business necessity," the plaintiff must then show the employer used the rule or policy as a mere pretext for discrimination. *Massarsky,* 706 F.2d at 120.

Statistical evidence within plaintiff's department exists to support a case of dispar-

ate impact. Statistics showed that five of the seven individuals laid off in Arlene's department were forty years of age or older. Further, the average age of employees in the finance department dropped from 38.9 to 37.9 as a result of the layoffs in 1983.

We find no business necessity in disparately impacting this many employees in the protected age group under A.D.E.A. guidelines. We further find that plaintiff has shown that she was the subject of disparate treatment based on her age in her discharge from Lutheran Hospital.

## III.

Plaintiff argues that the trial court failed to consider the plaintiff's anticipated salary increases. The court reached the conclusion that the plaintiff had failed to prove this element of damages in her case. The court stated that Lutheran had laid off 300 employees by reason of the financial problems they were experiencing, and there was no competent evidence to show anyone's salary would be increased.

The trial court has broad discretion to determine whether the evidence sufficiently establishes that the employee could have reasonably anticipated receiving alleged salary increases. *Kolb v. Goldring, Inc.*, 694 F.2d 869 (1st Cir.1982). We find no abuse of discretion on the part of the trial court here.

## IV.

Plaintiff complains it was error for the trial court not to make provisions for "front pay." Plaintiff cites the *Whittlesey* case for authority which states that the "award of 'front pay' is a permissible remedy under the Age Discrimination in Employment Act when reinstatement is not a suitable remedy for defendant's discriminatory discharge." *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 726 (2d Cir. 1984).

We note the language in *Whittlesey* which says "permissible remedy" and not mandatory or required. *Id.* at 726. The award of such damages is in the discretion of the trial court. *Davis v. Combustion Engineering, Inc.*, 742 F.2d 916, 922–23 (6th Cir.1984); *Dillon v. Coles*, 746 F.2d 998, 1006 (3d Cir.1984). We find no abuse of discretion by the trial court here.

## V.

The trial court concluded that the plaintiff failed to establish the element of damages designated as emotional distress. A review of the record points out no substantial evidence to support plaintiff's claims that damages for emotional distress should be awarded. Therefore, we affirm the trial court's holding with regard to this issue.

## Conclusion

Having reviewed the case on assigned errors, we determine that the trial court's findings are supported by substantial evidence.

We affirm.

AFFIRMED.

HAYDEN, J., concurs.

SACKETT, J., dissents.

SACKETT, Judge (dissenting).

I respectfully dissent.

The majority has determined as do I that the undisputed evidence is the employer was faced with a decline in patient census and revenue from 1982 to 1983. There is no question that a widespread staff reduction was necessary. I find there is undisputed evidence the employer had a legitimate nondiscriminatory reason for the discharge. Because of this showing, the presumption of discrimination drops from the case. *Trobaugh v. Hy–Vee Food Stores, Inc.*, 392 N.W.2d 154, 156 (Iowa 1986). Plaintiff must show the employer's proffered justification for the action was pre-

textual. She may carry this burden by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. *Id.* at 157.

There is not substantial evidence in this record that plaintiff met this burden. I would reverse.