**BOARD OF SUPERVISORS OF BUCHANAN COUNTY, Iowa, Appellant,**

v.

**IOWA CIVIL RIGHTS COMMISSION and Alice J. Peyton, Appellees.**

No. 96–1803.

Supreme Court of Iowa.

Sept. 23, 1998.

Steven A. Stefani and Thomas F. Ochs of Gray, Stefani & Mitvalsky, P.L.C., Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, and Teresa Baustian, Assistant Attorney General, for appellees.

Considered by HARRIS, P.J., and CARTER, NEUMAN, SNELL, and ANDREASEN, JJ.

CARTER, Justice.

The Board of Supervisors of Buchanan County, as a former employer of Alice J. Peyton, appeal from a district court order upholding the finding of the Iowa Civil Rights Commission that the county had discriminated against Peyton based on gender. Because we conclude that the civil rights commission erred in its application of important legal principles, we reverse the district court's decision. We remand the case to that court with directions to vacate the order of the commission and remand the case to the commission for further action consistent with our opinion.

Peyton began working as a part-time jailer with the Buchanan County Sheriff's Depart-

ment in September 1982. In April of 1984 she was named head jail administrator at a pay rate of $5.00 per hour. Her predecessor in that position, David Kuhn, who, like Peyton, was a civilian, had been compensated first at seventy-five percent and later at eighty percent of the sheriff's salary, a substantially higher pay rate than that afforded Peyton. After Peyton resigned to take a job elsewhere, the board of supervisors elected to staff the jail administration position with a deputy sheriff. Lieutenant Mark Fettkether of the Buchanan County Sheriff's Office was appointed to that position and was paid according to the established salary schedule for deputy sheriffs bearing the rank of lieutenant. Fettkether's pay exceeded that of both Kuhn and Peyton.

Peyton filed a complaint with the Iowa Civil Rights Commission in January 1990, alleging discrimination based on gender. The commission found in her favor and awarded her $23,134 in back pay and $2000 in damages for emotional distress. Interest was added to these awards. The action of the civil rights commission was affirmed by the district court in a review of agency action pursuant to Iowa Code section 17A.19(8) (1995). Other facts and circumstances pertinent to our decision will be considered in our discussion of the legal issues that have been presented.

## I. Standard for Review of Agency Action.

■ In actions for review of agency decisions under Iowa Code section 17A.19(8) (1997), an appellate court assesses whether that court's legal conclusions accord with those of the district court. *Office of Consumer Advocate v. Iowa State Commerce Comm'n*, 465 N.W.2d 280, 281 (Iowa 1991); *Iverson Constr., Inc. v. Department of Employment Servs.*, 449 N.W.2d 356, 358–59 (Iowa 1989); *Northwestern Bell Tel. Co. v. Iowa State Commerce Comm'n*, 359 N.W.2d 491, 495 (Iowa 1984). This is particularly true when, as in the present appeal, the appellant asserts as a basis for relief that the district court applied an improper legal standard in concluding that the agency's decision

was supported by substantial evidence. Iowa Code § 17A.19(8)(b), (e).

## II. Whether the Decision of the Iowa Civil Rights Commission was Induced by a Misapplication of the Law Concerning Pay Differentials Attributed to Differing Credentials, Background, And Experience.

■ A. *Consideration of Fettkether's qualifications.* In challenging the district court's order upholding the decision of the civil rights commission, Buchanan County asserts that the commission "erroneously failed to account for the substantial evidence demonstrating differences in credentials, background [and] experience . . . of the three individuals being compared." The most forceful point the county makes in this regard is its contention that both the district court and the commission erred in their conclusion that Mark Fettkether's status as a deputy sheriff had nothing to do with the duties and responsibilities of jail administration and thus afforded no basis for a pay differential. In this regard, the commission concluded in its conclusion of law No. 32 that

[f]undamental in the application of the law is the premise that it establishes an objective standard requiring that a judgment with respect to alleged discrimination between sexes is based upon the requirements of the particular jobs being compared, rather than a comparison of the skill of individual employees, the effort of individual employees, or their previous training and experience.

The court's conclusion of law No. 42(a), (b), and (c) contained similar legal pronouncements.

The commission's focus on the bare requirements of the job with no accompanying comparison of the respective qualifications and experience of Fettkether and Peyton was prompted by reliance on the elements of a prima facie case in a claim under the Equal Pay Act, 29 U.S.C. § 206(d)(1). The commission assumed its authority to draw on that federal legislation as a result of our recognition in other cases that we will look to federal case law interpreting Title VII (42 U.S.C. § 2000e(e)(2)) for guidance in deciding cases

under Iowa Code chapter 216 (formerly chapter 601A). *King v. Iowa Civil Rights Comm'n,* 334 N.W.2d 598, 601 (Iowa 1983); *Iowa State Fairgrounds Sec. v. Iowa Civil Rights Comm'n,* 322 N.W.2d 293, 296 (Iowa 1982).

In the *King* and the *Iowa State Fairgrounds* cases and earlier cases cited in *Iowa State Fairgrounds,* we found sufficient similarity between the Title VII prohibitions against employment discrimination and our own chapter 216 (formerly chapter 601A) to adopt the same analytical framework for burden of proof and order of presentation that federal courts have applied in Title VII cases. In *Boelman v. Manson State Bank,* 522 N.W.2d 73, 79 (Iowa 1994), we found sufficient similarity between our chapter 216 prohibitions against disability discrimination and those contained in 29 U.S.C. § 794 (§ 54 of the Rehabilitation Act) that federal cases interpreting that statute provide some guidance for applying our disability discrimination law. A similar comparison was made between chapter 216 and the Americans with Disabilities Act, 42 U.S.C. §§ 12102(2) and 12112(a) in *Bearshield v. John Morrell & Co.,* 570 N.W.2d 915, 918 (Iowa 1997).

■ In none of the above cases have federal decisions been determined to be dispositive, a contention we expressly rejected in *Franklin Manufacturing Co. v. Iowa Civil Rights Commission,* 270 N.W.2d 829, 831 (Iowa 1978). Federal cases provide guidance only to the extent that the statutory scheme they are interpreting and applying resembles our own civil rights legislation. The similarity in purpose and substantive content that exists between chapter 216 and the federal law contained in Title VII statutes and the Rehabilitation Act does not exist with respect to the Equal Pay Act for which Iowa has no statutory counterpart.

The Equal Pay Act provides that an employer may not discriminate

by paying wages to employees in such establishment at a rate less than the rate at which [the employer] pays wages to employees of the opposite sex.

29 U.S.C. § 206(d)(1). Unless the employer establishes one of the affirmative defenses recognized in the statute, a showing of wage disparity between employees of different gender performing the same tasks establishes liability as a matter of law. Unlike Title VII and the employment discrimination provisions of chapter 216, which require a showing of intent to discriminate based on gender, the Equal Pay Act requires no showing of discriminatory intent. *Fallon v. State of Illinois,* 882 F.2d 1206, 1213 (7th Cir. 1989); *Strecker v. Grand Forks County Soc. Serv. Bd.,* 640 F.2d 96, 99 (8th Cir.1980).

In the *Strecker* case, the Eighth Circuit described the situation as follows:

There appears to be some difference in both substantive and procedural approach. Substantively, title VII requires a showing of discriminatory intent. The Equal Pay Act creates a type of strict liability; no intent to discriminate need be shown. Procedurally, once a plaintiff has shown a prima facie case of sex discrimination under title VII the burden of going forward with the evidence to articulate a nondiscriminatory reason shifts to the employer. Plaintiff still retains the ultimate burden of proof to show discriminatory intent and that the justification by the defendant was pretextual.

Under the Equal Pay Act, once a prima facie case has been established, 29 U.S.C. § 206(d) provides defendants [certain] affirmative defenses. Defendants have the burden of proving the wage disparity is the result of [one of these affirmative defenses].

640 F.2d at 99 n.1 (citations omitted).

Although evidence based only on the similarity of tasks performed without comparing employee qualifications may establish a prima facie case under either the Equal Pay Act or Title VII and chapter 216, this is so for different reasons. It is so under the Equal Pay Act because disparity in pay for the performance of equal tasks is direct evidence of what that statute prohibits. It is so under Title VII and chapter 216 because disparity in pay for performance of similar tasks is circumstantial evidence of the discriminatory intent on which liability depends. But the fact that disparity in pay for the same task may establish a prima facie case does not

mean that the employer may not justify the pay disparity based on differing qualifications and experience of the employees being compared. Under the Equal Pay Act, the employer may raise as an affirmative defense that notwithstanding the similarity in the tasks performed the employees had different qualifications and experience justifying the pay differential.[1] Under Title VII and chapter 216, the employer may satisfy its burden of production as to a nondiscriminatory motive by evidence of differing qualifications and experience. The commission's conclusions of law No. 32 and No. 42(a), (b), and (c) are thus incorrect.

In deciding gender discrimination disputes, we adhere to the Title VII analytical framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668, 677–79 (1973). *See Hy-Vee Food Stores, Inc. v. Iowa Civil Rights Comm'n,* 453 N.W.2d 512, 516 (Iowa 1990). The plaintiff has the burden of establishing a prima facie case of discrimination. Once such a prima facie case is established, the burden shifts to the defendant to articulate some legitimate nondiscriminatory reason for the challenged action. If the defendant does produce such evidence, the plaintiff retains the ultimate burden of proof to show that the justification offered by defendant was pretextual and that the real basis for the disparate treatment was the differing gender

of the employees. This is the most recent application of the *McDonnell Douglas* analysis approved by the Supreme Court. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510–11, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407, 418–19 (1993).[2]

■ Buchanan County's production of evidence concerning its reasons for paying Fettkether a higher salary than Peyton left the ultimate burden of proof on Peyton to show that the proffered reasons were pretextual, and the true reason was gender discrimination. Based on the undisputed evidence in the record, she failed to do this. It appears without dispute that, in naming Fettkether as jail administrator, the board of supervisors made a conscious decision that it wished to have a sheriff's deputy serving in that capacity rather than a civilian. This provided desired backup capacity for the sheriff and his other deputies. Fettkether was the third-ranking officer in the sheriff's department with the responsibility of assuming the duties of acting sheriff when the sheriff and his chief deputy were unavailable. The record shows that Fettkether did in fact serve as acting sheriff while holding down the job of jail administrator. He also went on patrol at times and conducted routine traffic stops.

In electing to staff the jail administrator position with a sheriff's deputy rather than retaining civilian personnel for that post, the

---

1. In *Irby v. Bittick,* 44 F.3d 949 (11th Cir.1995), the court upheld a grant of summary judgment dismissing an Equal Pay Act claim by a female employee of the sheriff's office in Monroe County, Georgia. The sheriff's office sought to justify the pay disparity on the basis that the male employees performing similar tasks had more experience. The court concluded that differing experience was a proper justification for pay differentials under the Equal Pay Act. *Irby,* 44 F.3d at 955–57. It found that a comparison of the female claimant's experience to that of her male coemployees established this justification as a matter of law. *Id.*

2. In *Hamilton v. First Baptist Elderly Housing Foundation,* 436 N.W.2d 336 (Iowa 1989), we relied on the Supreme Court's interpretation of Title VII legislation in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207, 215–16 (1981), and declared that,

   when the plaintiff establishes a prima facie case, a presumption arises that the defendant employer discriminated against the plaintiff. If the trier of fact believes the plaintiff's evidence and if the defendant does nothing in the face of the presumption, judgment must be entered for the plaintiff because no issue of fact remains.

   *Hamilton,* 436 N.W.2d at 338. Since then *Hicks* has been decided by the Supreme Court, and a majority of the Court has concluded that under Title VII a mere rejection of the employer's justification as pretextual does not establish plaintiff's right to recover as a matter of law. The circumstantial evidence that has given rise to the prima facie case is a showing from which the necessary element of intent to discriminate based on gender may be inferred but, as the *Hicks* majority opined, the trier of fact is not compelled to draw that inference from the circumstantial evidence that establishes the prima facie case. *Hicks,* 509 U.S. at 510–11, 113 S.Ct. at 2749, 125 L.Ed.2d at 418–19. An affirmative finding must be made that the inference is sufficient. This is the standard we will apply in this and future cases.

board of supervisors were exercising a business decision in conducting the affairs of their office. It also appears without dispute that, once that decision was made, it necessarily established the rate of pay that Fettkether would receive for the jail administrator post because all deputy sheriffs' salaries were fixed by an established pay schedule based on rank. This was a valid, nondiscriminatory reason for the pay differential between Peyton and Fettkether. The civil rights commission and district court erred in concluding that it was not.

B. *Consideration of Kuhn's qualifications.* Buchanan County sought to justify the pay disparity between Peyton and Kuhn on the ground that Kuhn had more credentials and experience. At the time he was hired in January 1982, Kuhn had ten years of experience in law enforcement. He was a graduate of the law enforcement academy and held an AA degree in police science from the community college. He had prior experience as a jail administrator in Floyd County. Based on these qualifications, the sheriff of Buchanan County recommended, and the board of supervisors agreed, that Kuhn be paid seventy-five percent of the sheriff's salary.

Peyton, on the other hand, was a high school graduate who had completed a forty-hour correspondence course to become a certified jail officer. She also completed a National Sheriff's Association correspondence course for jail operations and another training course sponsored by the American Corrections Association. Her prior experience as a jail administrator had all been as a part-time jailer in Buchanan County over a period of eighteen months. Her starting salary was determined as a result of a negotiated settlement of a civil rights complaint that she had brought against Buchanan County in connection with her part-time jailer's job. As part of that settlement, she was offered Kuhn's job at an agreed pay rate of $5.00 per hour. When she left the service of Buchanan County in 1989, her pay rate was $7.27 per hour.

The commission found that, after Peyton had worked as jail administrator for fifteen months, her duties and responsibilities were sufficiently similar to those of Kuhn that the disparity in wages between Peyton and Kuhn ($11,190 vs. $17,800), together with the disparity of pay between Peyton and Fettkether, were sufficient to establish a prima facie case of wage discrimination based on gender. In making its findings concerning Peyton's comparison with Kuhn, the commission expressly referred to its conclusion of law No. 32 and stated:

> It is important to remember that what is being compared are the skill, effort, and responsibility requirements and the similarity of the working conditions of the job, and not the qualifications of employees. *See* Conclusion of Law No. 32.

This was error. As we have concluded in our discussion of Fettkether's wage comparison, credentials, experience, and qualifications may be a nondiscriminatory reason for differing pay rates for employees performing the same tasks.

■ The commission also found that it should not consider the consequences of Peyton's negotiated salary arising from the settlement of her prior civil rights complaint as a potential nondiscriminatory reason for the challenged pay differentials under consideration in the present case. It stated in this regard:

> This proposition must be rejected for two reasons. First, to the extent any provision of an employment contract is contrary to the Iowa Civil Rights Act, such provision is of no force and effect.... Second, there can be no prospective waiver of an employee's rights under anti-discrimination laws.

Assuming that a person may not waive their rights under antidiscrimination laws prospectively, we do not believe that Peyton may be allowed to settle one civil rights claim in consideration of the county's payment of an agreed salary and then immediately claim that that salary is discriminatory. For some period of time, that salary was insulated from the type of complaint lodged in the present action. Moreover, at any future point in time, beginning salary is a factor to be considered in determining whether a subsequent salary level is the product of gender discrimination. The civil rights commission and district court erred in failing to take this into account.

### III. *Disposition.*

We conclude that the decision of the civil rights commission resulted in some part from a misapplication of law. The commission should not have considered Fettkether's pay as circumstantial evidence that indicated gender discrimination and should also not have considered his pay in determining the amount of damages that plaintiff was entitled to recover. In addition, the commission erred in refusing to take into account the differences in qualifications and experience between Peyton and Kuhn and in failing to give any consideration to Peyton's negotiated starting salary in its determination of whether an apparent salary disparity at some later stage was the product of gender discrimination. When this court concludes that the agency has misapplied the law, it should direct the district court to reverse the agency's order and remand the case to the agency for further consideration in accordance with the provisions of our decision. *Falczynski v. Amoco Oil Co.*, 533 N.W.2d 226, 235–36 (Iowa 1995). This is the disposition that we direct in the present matter. Costs of appeal are assessed to appellees.

**REVERSED AND REMANDED.**