Todd Eric MISSMAN, Appellant,

v.

IOWA DEPARTMENT OF TRANS-
PORTATION, Motor Vehicle
Division, Appellee.

No. 01–1585.

Supreme Court of Iowa.

Nov. 14, 2002.

Charles H. Levad, Mason City, for ap-
pellant.

Thomas J. Miller, Attorney General,
David A. Ferree, Special Assistant Attor-
ney General and John Baty and Kerry
Anderson, Assistant Attorneys General,
for appellee.

LAVORATO, Chief Justice.

Todd Eric Missman appeals from the
district court's judicial review ruling af-
firming the Iowa Department of Trans-
portation's (IDOT) revocation of Miss-
man's driver's license. The revocation
was pursuant to Iowa Code section 321J.9
(1999) for a chemical test refusal. Miss-
man contends there was a lack of substan-
tial evidence to support a finding that the
arresting officer had reasonable grounds
to believe he—Missman—was operating a
motor vehicle while under the influence of
an alcoholic beverage. We disagree and
therefore affirm.

**I. Background Facts and Proceed-
ings.**

On March 10, 2001, Officer David Leh-
man of the Forest City, Iowa Police De-
partment served Missman with a notice of
revocation of his driver's license after the
officer stopped Missman and Missman re-
fused to submit to a chemical test pursuant
to Iowa's implied consent law. *See* Iowa
Code § 321J.9(1). Missman appealed the
decision and an administrative law judge
(ALJ) held a telephone hearing on the
appeal. *See* Iowa Code § 321J.13. Officer
Lehman was subpoenaed to testify but did

not appear. Missman was the only witness who testified.

Missman testified as follows. On March 10, 2001, Missman had been to the VIP lounge and the Super Bowl bowling alley in Forest City. His fiancée and a friend's wife were with him. They arrived at the VIP lounge around 9:00 p.m. and then proceeded to the Super Bowl about 10:00 p.m., where they stayed until 2:00 a.m. The Super Bowl is about a mile and a quarter east of Forest City.

After they left the Super Bowl, Missman proceeded west on Highway 9, a two-lane highway, into Forest City. At some point, Missman noticed a police officer stopped at a stop sign. The officer began following Missman. Missman claimed he swerved one time to avoid a dead animal on the road and that the officer did the same thing.

Approximately twenty-two blocks from the point that the officer began following Missman, the officer turned on his lights. Missman pulled into a parking lot. According to Missman, the officer came up to him and said that "I was weaving all over the place." Missman claimed he disputed the officer's claim and said he had swerved one time to avoid the dead animal and that the officer had done the same thing. The officer then ordered Missman out of his vehicle. At this point, Missman reached behind the driver's seat, opened a third door on his truck, pulled out his wheelchair and got into it. (Missman is paralyzed from the waist down as a result of a car accident and drives by means of hand controls.)

Missman claimed the officer gave him no field sobriety tests, but instead took him to the sheriff's department and to jail. Missman did admit that the officer asked him if he had been drinking and that he told the officer he had had "a few beverages earlier that night."

At the sheriff's department, a second officer asked Missman to take a breath test but Missman refused to do so. Later, Officer Lehman, the arresting officer, asked Missman to take a breath test. Missman again refused but said he would take a blood test instead.

When asked at the hearing why he refused to take a breath test, Missman claimed he did not trust the test. In addition, he testified that he had four alcoholic beverages between 9:00 and 11:30 on the evening in question. He also testified that he had taken several different prescription medications including a muscle relaxant and Darvocet. Missman ended his testimony by stating he was not intoxicated.

The IDOT offered no evidence and the ALJ took no judicial notice of any documents. Missman through his attorney argued to the ALJ that "the evidence indicates that there was no probable cause for the stop or for invocation of the implied consent, and we're asking that this suspension be reversed."

The ALJ upheld the revocation. In doing so, the ALJ relied on, among other things, Officer Lehman's certified statement in the Request & Notice (implied consent) form that he had reasonable grounds to believe that Missman was operating a motor vehicle while intoxicated. The ALJ also relied on Missman's incriminating testimony, such as his concession that he admitted to Officer Lehman that he had consumed alcoholic beverages earlier in the evening.

Missman appealed the ALJ's decision. He argued that the ALJ failed to consider his testimony and erred in considering the Request & Notice form because it was not entered into evidence. The reviewing officer rejected Missman's arguments and upheld the ALJ's decision.

Missman thereafter filed a petition for judicial review in the district court. The district court rejected Missman's argument that the ALJ had improperly considered the Request & Notice form even though the form was not formally introduced and received into evidence. The court concluded that Officer Lehman had reasonable grounds to believe that Missman was operating a motor vehicle while intoxicated. The court based its conclusion on the incriminating portions of Missman's testimony coupled with the officer's certified statement that he had reasonable grounds to believe that Missman was operating a motor vehicle while intoxicated.

## II. Issue.

In his appeal, Missman notes that "[t]he sole issue at the hearing contesting this implied consent revocation was whether the officer had enough information to constitute reasonable grounds to believe that [he—Missman] was operating a vehicle while under the influence of alcohol." Missman contends that the district court incorrectly decided there was enough information, and therefore was in error in upholding the IDOT's revocation of his driver's license.

Missman concedes that he had the burden of showing that Officer Lehman did not have reasonable grounds to invoke implied consent. He contends he met that burden for two reasons. First, the IDOT and the district court erred in considering the Request & Notice form in determining whether the officer had reasonable grounds when that document was not introduced and received into evidence. Second, Missman's own testimony sufficiently established that the police officer lacked reasonable grounds to believe Missman was driving while intoxicated. We need not consider the first issue because even without the Request & Notice form, we think there was sufficient evidence from Missman's own testimony to establish such grounds.

## III. Sufficiency of the Evidence.

**A. Applicable statutory provisions.** Iowa Code section 321J.2 provides that a person commits the offense of operating while intoxicated if the person operates a motor vehicle while under the influence of an alcoholic beverage or drug or a combination of both, or while having an alcohol concentration of .10 or more. *See* Iowa Code § 321J.2(1)(a), (b). Iowa Code section 321J.6—the implied consent provision—sets forth conditions under which a peace officer may request a specimen of blood, breath or urine for chemical testing to determine alcohol concentration:

A person who operates a motor vehicle in this state under circumstances which give *reasonable grounds* to believe that the person has been operating a motor vehicle in violation of section 321J.2 ... is deemed to have given consent to the withdrawal of specimens of the person's blood, breath, or urine and to a chemical test or tests of the specimens for the purpose of determining the alcohol concentration....The withdrawal of the body substances and the tests or tests shall be administered at the written request of a peace officer having *reasonable grounds* to believe that the person was operating a motor vehicle in violation of section 321J.2 ..., and if any of the following conditions exists:

a. A peace officer has lawfully placed the person under arrest for violation of section 321J.2.

. . . .

Iowa Code § 321J.6(1) (emphasis added).

Iowa Code section 321J.9(1) provides that if the person refuses to submit to testing,

a test shall not be given, but the [IDOT], upon the receipt of the peace officer's certification, subject to penalty for perjury, that the officer had reasonable grounds to believe the person to have been operating a motor vehicle in violation of section 321J.2 . . ., that specified conditions existed for chemical testing pursuant to section 321J.6, and that the person refused to submit to the chemical testing, shall revoke the person's driver's license. . . .

Iowa Code § 321J.9(1).

Iowa Code section 321J.13(2) sets forth what may be addressed in the hearing on revocation. In relevant part, this provision provides:

The hearing may be recorded and its scope shall be limited to the issues of whether a peace officer had reasonable grounds to believe that the person was operating a motor vehicle in violation of section 321J.2 . . . and one or more of the following:

a. Whether the person refused to submit to the test or tests.

Iowa Code § 321J.13(2). Here, Missman only challenges whether Officer Lehman had reasonable grounds to believe Missman was driving under the influence of an alcoholic beverage.

■■■ **B. Burden of proof, the test for reasonable grounds, and scope of review.** In an implied consent revocation proceeding, the driver has the burden to prove why the license should not be revoked. *Reed v. Iowa Dep't of Transp.*, 478 N.W.2d 844, 846 (Iowa 1991). The burden is a preponderance of the evidence. *Mary v. Iowa Dep't of Transp.*, 382 N.W.2d 128, 132 (Iowa 1986). Missman, then, had the burden to prove Officer Lehman lacked reasonable grounds to believe Missman had been operating a motor vehicle while intoxicated.

We have held that "[r]easonable grounds exist if the facts and circumstances known to the officer *at the time action was required* would have warranted a reasonable person to believe that an offense had been committed." *Reed*, 478 N.W.2d at 846 (emphasis added). Contrary to Missman's belief, probable cause, which requires more proof, does not apply here. *Westendorf v. Iowa Dep't of Transp.*, 400 N.W.2d 553, 556 (Iowa 1987) (holding that district court incorrectly applied probable-cause-to-stop test in determining whether the IDOT had authority to revoke driver's license).

■■■ On appeal, an agency's factual findings are binding if supported by substantial evidence in the record made before the agency when that record is viewed as a whole. *Reed*, 478 N.W.2d at 846. "Substantial evidence" is now defined as "the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." Iowa Code § 17A.19(10)(f)(1) (2001) (effective July 1, 1999; *see* 1998 Iowa Acts ch. 1202 §§ 24, 46).

"When the record is viewed as a whole" is now defined

to mean that the adequacy of the evidence in the record before the court to support a particular finding of fact must be judged in light of all the relevant evidence in the record cited by any party that detracts from that finding as well as all of the relevant evidence in the record cited by any party that supports it, including any determinations of veracity by the presiding officer who personally observed the demeanor of the witnesses and the agency's explanation

of why the relevant evidence in the record supports its material findings of fact. Iowa Code § 17A.19(10)(f)(3) (2001) (effective July 1, 1999; *see* 1998 Iowa Acts ch. 1202, §§ 24,46).

Entirely consistent with these two definitions is this court's holding that

evidence is not insubstantial merely because it would have supported contrary inferences. Nor is evidence insubstantial because of the possibility of drawing two inconsistent conclusions from it. The ultimate question is not whether the evidence supports a different finding but whether the evidence supports the findings actually made.

*Reed,* 478 N.W.2d at 846 (citations omitted).

In view of the agency's finding that Officer Lehman had the requisite reasonable grounds, Missman had to establish a lack of substantial evidence to support such finding. *See id.* This is a heavy burden and, as we next discuss, one that Missman falls short of meeting.

■ **C. Analysis.** Missman's own testimony provides substantial evidence that Officer Lehman had reasonable grounds to believe that Missman was driving while under the influence of an alcoholic beverage. By this testimony, Missman provided evidence that Officer Lehman believed that he—Missman—"was weaving all over the road." At least twice in his testimony, Missman confirmed that this was the officer's contention. True, Missman testified that he was not swerving and that he disputed this with the officer. However, we fail to see how this denial detracts from Missman's own admission that the officer believed he was. And, in fact, Missman admitted that he had swerved one time, although he maintained that this was to avoid a dead animal in the road.

Missman also testified that when asked if he had been drinking, he told the officer that he had consumed "a few beverages earlier that night." This admission, when coupled with Missman's testimony that Officer Lehman believed Missman was swerving, further supports a finding that the officer believed that Missman was driving while under the influence. While Missman believes his testimony supports his claim that he was not intoxicated, it also corroborates the officer's belief that he was. A reasonable person armed with these same facts could have believed such an offense had been committed. As mentioned, the ultimate question is not whether the evidence supports a different finding, but whether the evidence supports the finding actually made.

Moreover, the reviewing officer questioned Missman's veracity, noting that Missman's "direct interest in the outcome of the hearing and the lack of any [corroborating] evidence weigh against [Missman's] testimony." *See Gregory v. Gregory,* 248 Iowa 672, 682, 82 N.W.2d 144, 150 (1957) ("The court is not required to accept as a verity uncontradicted testimony, but might well scrutinize closely such testimony as to its credibility, taking into consideration all the circumstances throwing light thereon, such as the interest of the witnesses, remote or otherwise."). The corroborating evidence mentioned is obviously a reference to Missman's failure to produce the two witnesses who could have corroborated his account of what happened.

We conclude Missman has failed to establish as a matter of law that there was insubstantial evidence in the record made before the IDOT when that record is viewed as a whole to support the IDOT's finding that Officer Lehman had reasonable grounds to believe that Missman was operating a motor vehicle while under the

influence of an alcoholic beverage. We therefore affirm the district court ruling upholding the IDOT's decision.

**AFFIRMED.**