# IN THE SUPREME COURT OF IOWA

No. 10–2117

Filed March 2, 2012

**TIM NEAL,**

Appellant,

vs.

**ANNETT HOLDINGS, INC.,**

Appellee.

Appeal from the Iowa District Court for Polk County, Karen A. Romano, Judge.

Workers' compensation claimant asserts the district court erred in holding the employer offered "suitable work" under Iowa Code section 85.33(3) (2007). On cross-appeal, employer argues the commissioner's industrial disability determination is not supported by substantial evidence. **AFFIRMED IN PART AND REVERSED IN PART.**

Christopher D. Spaulding of Berg, Rouse, Spaulding & Schmidt, P.L.C., Des Moines, for appellants.

Charles A. Blades and Sasha L. Monthei of Scheldrup Blades Schrock Smith Aranza, PC, Cedar Rapids, for appellee.

**APPEL, Justice.**

In this case, we must determine whether the Workers' Compensation Commissioner (commissioner) erred in concluding that light duty employment offered to an injured worker was not "suitable work" under Iowa Code section 85.33(3) (2009) because the offered employment was located 387 miles from the residence of the worker. We also must address whether substantial evidence supports the commissioner's finding that the employee suffered a sixty percent industrial disability as a result of an on-the-job injury. The district court reversed the commissioner's ruling on the "suitable work" issue, but affirmed the commissioner's ruling on industrial disability. For the reasons expressed below, we reverse the district court on the "suitable work" issue, but affirm the district court on the issue of industrial disability.

## I. Factual and Procedural Background.

TMC Transportation, a division of Annett Holdings, employed Tim Neal as an over-the-road flatbed truck driver. In September 2007, Neal was sent to Michigan to pick up a load of plywood. A forklift driver loaded Neal's flatbed with the plywood in three stacks and left tarps on top of the load. In an effort to secure the tarps, Neal climbed onto the flatbed and, as he was lifting himself onto the first stack, injured his shoulder.

An MRI scan of Neal's shoulder revealed a partial full thickness tear of the rotator cuff, tendinopathy and thickening of the rotator cuff, and hypertrophic change of the AC joint. Due to the injury, Neal's doctor imposed work restrictions including limitations on the amount of weight Neal could lift. TMC offered Neal light-duty work in Des Moines, Iowa.

At the time, Neal resided with his wife and three children in Grayville, Illinois. Grayville is 387 miles from Des Moines. TMC offered to provide Neal a motel room while Neal worked in Des Moines. TMC also stated it would provide Neal transportation costs to allow Neal to return to Grayville every other weekend. According to Neal, if he were to participate in TMC's light-duty program he could return home every other week to see his family. Before the injury, Neal returned home every weekend and occasionally during the week.

Neal declined TMC's offer to perform light-duty work in Des Moines. As a result, TMC suspended Neal's workers' compensation benefits.

In February 2009, an arbitration hearing was held on Neal's workers' compensation claim. In the arbitration decision, the deputy commissioner concluded Annett Holdings properly suspended temporary disability benefits because Neal refused to accept "suitable work" as defined in Iowa Code section 85.33(3). The deputy commissioner also concluded Neal experienced a fifteen percent permanent partial disability.

Neal appealed the arbitration decision. Neal argued Annett Holdings failed to offer "suitable work" because the work was located 387 miles from Neal's residence. Neal also challenged the finding of a fifteen percent permanent partial disability.

On appeal, the commissioner[1] modified the arbitration decision. Specifically, the commissioner concluded Annett Holdings failed to offer "suitable work" because the job was located a great distance from Neal's

---

[1]The appeal in this case was decided on behalf of the commissioner by a deputy commissioner. For the purposes of this proceeding, the decision maker on appeal is referred to as the commissioner.

residence. The commissioner observed that Neal could return home only every other weekend, whereas prior to the injury he could return home every weekend. The commissioner reasoned a worker should not be required to uproot and move to a different location, observing that "[b]eing away from the support of your wife and family, especially while recovering from a serious work injury, is not an insignificant matter." The commissioner also found Neal suffered from a sixty percent industrial disability. Annett Holdings filed a motion to reconsider, which the commissioner denied. Annett Holdings petitioned for judicial review.

The district court affirmed in part and reversed in part. The district court affirmed the commissioner's finding that Neal suffered a sixty percent industrial disability. The district court reversed, however, on the issue of whether Annett Holdings offered suitable work. The district court stated Iowa Code section 85.33(3) "does not define 'suitable work' in terms of its location; rather, 'suitable work' is that which is 'consistent with the employee's disability.'" Because Annett Holdings offered light-duty work consistent with Neal's disability, the district court concluded that Neal refused suitable work and thus, forfeited his right to temporary partial, temporary total, and healing period benefits during his period of refusal. Neal appealed, and Annett Holdings cross-appealed.

## II.  Standard of Review.

Judicial review of the decisions of the workers' compensation commissioner is governed by Iowa Code chapter 17A. *Mycogen Seeds v. Sands*, 686 N.W.2d 457, 463 (Iowa 2004). A district court acts in an appellate capacity when it exercises its judicial review power. *Id.* When reviewing a district court's decision "we apply the standards of chapter 17A to determine whether the conclusions we reach are the same as

those of the district court. If they are the same, we affirm; otherwise, we reverse." *Id.* at 464 (citation omitted).

In this case, we are asked to consider whether the commissioner erred in concluding that Annett Holdings failed to offer suitable work for purposes of Iowa Code section 85.33(3). To the extent the commissioner's decision reflects factual determinations that are "clearly vested by a provision of law in the discretion of the agency," we are bound by the commissioner's findings of fact if they are supported by substantial evidence. *Schutjer v. Algona Manor Care Ctr.*, 780 N.W.2d 549, 557 (Iowa 2010) (citation and internal quotation marks omitted); *Meyer v. IBP, Inc.*, 710 N.W.2d 213, 219 (Iowa 2006). Further, the commissioner's application of law to the facts as found by the commissioner will not be reversed unless it is "irrational, illogical, or wholly unjustifiable." *Lakeside Casino v. Blue*, 743 N.W.2d 169, 173 (Iowa 2007) (citation and internal quotation marks omitted).

The question of whether an employer offered suitable work is ordinarily a fact issue. *See Schutjer*, 780 N.W.2d at 557, 559; *McCormick v. N. Star Foods, Inc.*, 533 N.W.2d 196, 199 (Iowa 1995). Whether the commissioner considered an improper factor in reaching its factual determination regarding suitability, however, is a question of law. *Cf. Pac. Mills v. Dir. of Div. of Emp't Sec.*, 77 N.E.2d 413, 415 (Mass. 1948).

With respect to questions of law, we have stated that no deference is given to the commissioner's interpretation of law because the "interpretation of the workers' compensation statutes and related case law has not been clearly vested by a provision of law in the discretion of the agency." *Schutjer*, 780 N.W.2d at 558 (citation and internal quotation marks omitted). Shortly after *Schutjer*, this court decided *Renda v. Iowa Civil Rights Commission*, 784 N.W.2d 8 (Iowa 2010), which

clarified and refined our approach to determining whether an agency has been delegated the authority to interpret a statute.

In *Renda*, we explained that "each case requires a careful look at the specific language the agency has interpreted as well as the specific duties and authority given to the agency with respect to enforcing particular statutes." *Renda*, 784 N.W.2d at 13. We give deference to the agency's interpretation if the agency has been clearly vested with the discretionary authority to interpret the specific provision in question. *Id.* at 11. If, however, the agency has not been clearly vested with the discretionary authority to interpret the provision in question, we will substitute our judgment for that of the agency if we conclude the agency made an error of law. *Id.* at 14–15. Deference may be given to an agency's interpretation in a specific matter or an interpretation embodied in an agency rule. *Sherwin-Williams Co. v. Iowa Dep't of Revenue*, 789 N.W.2d 417, 422–23 (Iowa 2010). Indications that the legislature has delegated interpretive authority include "rule-making authority, decision-making or enforcement authority that requires the agency to interpret the statutory language, and the agency's expertise on the subject or on the term to be interpreted." *Id.* at 423.

We conclude the legislature did not vest the authority to interpret the phrase "suitable work" for purposes of Iowa Code section 85.33(3) in the workers' compensation commission. First, the legislature has made no explicit grant of interpretive authority to the commission. *See Renda*, 784 N.W.2d at 11. Second, while we recognize Iowa Code section 86.8(1) creates in the commissioner a duty to "[a]dopt and enforce rules necessary to implement . . . chapters 85, 85A, 85B, [86,] and 87," the mere grant of rulemaking authority does not give an agency authority to interpret all statutory language. *Renda*, 784 N.W.2d at 13–14. Third, as

discussed below, the concept of "suitable work" is found in similar contexts, including employment discrimination, wrongful termination, unemployment compensation, and the odd-lot doctrine. Therefore, we are not convinced "suitable work" is a specialized phrase within the expertise of the commissioner; rather, the phrase has a specialized legal meaning extending beyond the context presented in this case. *Id.* at 14. Consequently, we accord no deference to the interpretation of the commissioner and will substitute our own judgment if we conclude the commissioner made an error of law. *Id.* at 14–15; *Swiss Colony, Inc. v. Deutmeyer*, 789 N.W.2d 129, 133 (Iowa 2010).

**III. Discussion.**

**A. Suitable Work.** Iowa Code section 85.33(3) disqualifies an employee from receiving temporary partial, temporary total, and healing period benefits if the employer offers "suitable work" that the employee refuses. Iowa Code § 85.33(3); *Schutjer*, 780 N.W.2d at 559. If the employer fails to offer suitable work, the employee will not be disqualified from receiving benefits regardless of the employee's motive for refusing the unsuitable work. *See Schutjer*, 780 N.W.2d at 559. We, therefore, must consider whether Annett Holdings offered Neal suitable work for purposes of Iowa Code section 85.33(3).

When interpreting a statute, we will not look beyond the express terms of the statute if the text of the statute is plain and its meaning clear. *State v. Tesch*, 704 N.W.2d 440, 451 (Iowa 2005). When the words of a statute are not defined by the legislature, we may refer to "prior decisions of this court and others, similar statutes, dictionary definitions, and common usage." *Gardin v. Long Beach Mortg. Co.*, 661 N.W.2d 193, 197 (Iowa 2003); *Bernau v. Iowa Dep't of Transp.*, 580 N.W.2d 757, 761 (Iowa 1998). Iowa Code section 85.33(3) provides:

3. If an employee is temporarily, partially disabled and the employer for whom the employee was working at the time of injury offers to the employee suitable work consistent with the employee's disability the employee shall accept the suitable work, and be compensated with temporary partial benefits. If the employee refuses to accept the suitable work with the same employer, the employee shall not be compensated with temporary partial, temporary total, or healing period benefits during the period of the refusal. If suitable work is not offered by the employer for whom the employee was working at the time of the injury and the employee who is temporarily partially disabled elects to perform work with a different employer, the employee shall be compensated with temporary partial benefits.

Iowa Code § 85.33(3). The district court looked no further than this section because, in its view, "suitable work" is defined in the statute as work that is "consistent with the employee's disability."

We begin our analysis of the statute by considering whether the phrase "consistent with the employer's disability" provides a definition of the phrase "suitable work" in the statute. We conclude that it does not. The language of the statute requires that the work offered to an injured worker must be both "suitable" and "consistent with the employee's disability" before the employee's refusal to accept such work will disqualify him from receiving temporary partial, temporary total, and healing period benefits. *See id.* Otherwise, the modifier "suitable" would have no meaning and would be mere surplusage. In interpreting a statute, "each term is to be given effect," *Miller v. Marshall Cnty.*, 641 N.W.2d 742, 749 (Iowa 2002), and we "will not read a statute so that any provision will be rendered superfluous," *Thoms v. Iowa Pub. Employees' Ret. Sys.*, 715 N.W.2d 7, 15 (Iowa 2006). *See also State v. Osmundson*, 546 N.W.2d 907, 910 (Iowa 1996); 2A Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 46:6, at 230 (7th ed. 2007) ("It is an elementary rule of construction that effect must be given, if

possible, to every word, clause and sentence of a statute." (citation and internal quotation marks omitted)).

We thus conclude that the phrase "consistent with the employee's disability" modifies "suitable work." The phrase "suitable work," however, is not defined in the statute. We must breathe some life into this phrase in order to resolve the question of whether the commissioner erred in determining that the offer of light-duty employment in this case was insufficient to cut off receipt of temporary workers' compensation benefits under the statute.

We begin our effort to understand the meaning of the phrase "suitable work" by looking at the workers' compensation statutes in other states. Some states expressly require a consideration of the location of available work in determining an employee's eligibility for workers' compensation benefits. *See, e.g.*, Nev. Rev. Stat. Ann. 616C.475(8)(a) (West, Westlaw through 2009 75th Reg. Sess. & 2010 26th Special Sess.); Or. Rev. Stat. Ann. § 656.268(4)(c)(A)–(B) (West, Westlaw through 2011 Reg. Sess.); *see also* La. Rev. Stat. Ann. § 23:1221(3)(c)(i) (West, Westlaw through 2011 1st Extraordinary & Reg. Sess.); Mich. Comp. Laws Ann. § 418.301(9)(a), (11) (West, Westlaw through P.A. 2012, No. 4, of the 2012 Reg. Sess.). Nevada, for instance, requires an offer of temporary, light-duty employment to be "substantially similar to the employee's position at the time of his or her injury in relation to the location of the employment." Nev. Rev. Stat. Ann. 616C.475(8). Similarly, Oregon allows an employee to refuse an offer of modified employment if the offer "[r]equires a commute that is beyond the physical capacity of the worker" or is at a "work site more than [fifty] miles one way from where the worker was injured." Or. Rev. Stat. Ann. § 656.268(4)(c)(A)–(B). Further, Michigan precludes an employee from

receiving wage-loss benefits if the employee receives and refuses a "bona fide offer of reasonable employment." Mich. Comp. Laws Ann. § 418.301(9)(a). The statute states "reasonable employment" means work that is "within a reasonable distance from [the] employee's residence." *Id.* § 418.301(11). Courts in these jurisdictions have little difficulty construing their statutes to include geographic location as a factor to be considered in determining whether an employee is eligible for certain workers' compensation benefits. *See, e.g., Jones-Jennings v. Hutzel Hosp.*, 565 N.W.2d 680, 686 (Mich. Ct. App. 1997); *Amazon.com v. Magee*, 119 P.3d 732, 735 (Nev. 2005); *see also Caparotti v. Shreveport Pirates Football Club*, 768 So. 2d 186, 191 (La. Ct. App. 2000).

A number of state workers' compensation statutes, while not expressly requiring a consideration of location, provide that refusal of suitable employment does not disqualify a claimant if the refusal is "justifiable" or "reasonable." *See, e.g.,* Ala. Code § 25-5-57(a)(3)(e) (West, Westlaw through 2011 Reg. Sess.); Ark. Code Ann. § 11-9-526 (West, Westlaw through 2011 Reg. Sess.); Fla. Stat. Ann. § 440.15(6) (West, Westlaw through Feb. 16, 2012 of the 2012 2nd Reg. Sess.); Ga. Code Ann. § 34-9-240(a) (West, Westlaw through 2011 Reg. & Special Sess.); Ind. Code Ann. § 22-3-3-11(a) (West, Westlaw through 1st Reg. Sess.); N.C. Gen. Stat. Ann. § 97-32 (West, Westlaw through S.L. 2012-1 of the 2011 Reg. Sess.); N.D. Cent. Code Ann. 65-05-08(7) (West, Westlaw through 2011 Reg. Sess. & Special Sess.); Tenn. Code Ann. § 50-6-207(3)(D) (West, Westlaw through 2011 1st Reg. Sess.); Va. Code Ann. § 65.2-510(A) (West, Westlaw through 2011 Reg. Sess.). In Georgia, for example, an employee who "refuses employment procured for him or her and suitable to his or her capacity" is not entitled to benefits unless the refusal was justified. Ga. Code Ann. § 34-9-240(a). The Georgia

Supreme Court addressed what it meant for a refusal to be justified in *City of Adel v. Wise*, 401 S.E.2d 522 (Ga. 1991).  The court explained a refusal to accept work is justified if the employee would be required to relocate from his or her home.  *Wise*, 401 S.E.2d at 525.  Thus, the court concluded, "factors such as geographic relocation or travel conditions which would disrupt an employee's life" are to be considered when determining whether an employee justifiably refused work.  *Id.*; *see also Counts v. Acco Babcock, Inc.*, No. 135, 1988 WL 81394, at \*1 (Del. 1988) (holding claimant, a resident of Delaware, was not required to relocate and to accept offer of employment in Pennsylvania).

In other jurisdictions, courts have held, in the absence of legislative direction, that the distance of available work may be considered in determining the employee's eligibility for workers' compensation benefits.  In *Joyner v. District of Columbia Department of Employment Services*, 502 A.2d 1027 (D.C. 1986), the court interpreted a statute providing the following:

> If the employee voluntarily limits his income or fails to accept employment commensurate with his abilities, then his wages after becoming disabled shall be deemed to be the amount he would earn if he did not voluntarily limit his income or did accept employment commensurate with his abilities.

*Joyner*, 502 A.2d at 1029 (quoting D.C. Code § 36-308(c) (1981), currently § 32-1508(3)(V)(iii) (West, Westlaw through Jan. 11, 2012)).  The *Joyner* court observed that the statute does not expressly address "*where* 'employment commensurate with [the claimant's] abilities' must be located to be relevant to determining whether a claimant has voluntarily limited her income or failed to accept such employment."  *Joyner*, 502 A.2d at 1030 (quoting D.C. Code § 36-308(c)).  The *Joyner* court, however, upheld an agency decision declaring that the District of

Columbia served as the relevant labor market for determining whether an employee disqualified himself or herself from benefits. *Id.* Although *Joyner* is not a case involving temporary disability benefits, it does stand for the broader proposition that geographic location may be considered in determining whether the availability of employment cuts off statutory workers' compensation benefits. *See also Shah v. Howard Johnson*, 535 S.E.2d 577, 583 (N.C. Ct. App. 2000) (stating "it seems obvious that suitable employment for a person would normally be located within a reasonable commuting distance of that person's home").

Pennsylvania has also allowed a consideration of the distance of work in determining a claimant's eligibility for workers' compensation benefits in the absence of legislative direction. In *Kachinski v. W.C.A.B.*, 532 A.2d 374 (Pa. 1987), the Pennsylvania Supreme Court, in the absence of a statute, required suitable work to be "actually availab[le]" in order for a modification of benefits to be effected. *Kachinski*, 532 A.2d at 379, *superseded by statute*, 77 Pa. Cons. Stat. Ann. § 512 (1996), *as recognized in Bufford v. W.C.A.B.*, 2 A.3d 548, 553 n.3 (Pa. 2010). The Pennsylvania Commonwealth Court interpreted this availability requirement in *Goodwill Industries of Pittsburgh v. W.C.A.B.*, 631 A.2d 794 (Pa. Commw. Ct. 1993).

In *Goodwill*, the court addressed whether a twenty-hour per week, light-duty job located thirty miles from the claimant's home was unavailable to the claimant because it was located outside the claimant's geographic area. *Goodwill Indus. of Pittsburgh*, 631 A.2d at 795. The *Goodwill* court held the job was unavailable because the claimant would have been required to commute three hours by bus. *Id.* at 796. The court explained that "cases involving relatively long commutes and relatively short work days must be examined on their individual fact

patterns as deemed appropriate for a reasonable person in the position of the claimant." *Id.*; *see also Combs v. Kelly Logging,* 769 P.2d 572, 574 (Idaho 1989) ("It is well established, even without legislative statutory direction, that a worker who sustains an industrial accident is not required to move from his or her home to find suitable work in order to be eligible for worker's compensation."); *Dilkus v. W.C.A.B.,* 671 A.2d 1135, 1139 (Pa. 1996) (examining claimant's residence or geographic area in determining availability of a position); *Yellow Freight Sys., Inc. v. W.C.A.B.,* 377 A.2d 1304, 1306 (Pa. Commw. Ct. 1977) (same).

In short, it is clear that geographic proximity is commonly considered as a relevant factor in workers' compensation statutes. Moreover, *Joyner, Kachinski,* and *Goodwill* are substantial authority for the proposition that geographic location is an appropriate consideration in determining whether the availability of other employment is a basis for termination of workers' compensation benefits under state statutes that are silent on the issue. The law is sufficiently developed in this regard that a leading treatise on workers' compensation issues states that "[t]he suitability of a job . . . refers to the employee's physical capacity or ability to perform the job, or to factors such as geographic relocation or travel conditions that would disrupt the employee's life." 2 *Modern Workers Compensation* § 200.32 (Westlaw 2012).

In addition to these statutes and cases involving workers' compensation benefits, analogy may be drawn from other areas of employment law. For example, with respect to unemployment compensation, Iowa Code section 96.5(3) states that an individual is disqualified from receiving unemployment benefits "[i]f the department finds that an individual has failed, without good cause, either to apply for available, suitable work when directed by the department or to accept

suitable work when offered that individual." Iowa Code § 96.5(3). Section 96.5(3) goes on to provide:

> *a.* (1) In determining whether or not any work is suitable for an individual, the department shall consider the degree of risk involved to the individual's health, safety, and morals, the individual's physical fitness, prior training, length of unemployment, and prospects for securing local work in the individual's customary occupation, the distance of the available work from the individual's residence, and any other factor which the department finds bears a reasonable relation to the purposes of this paragraph.

Iowa Code § 96.5(3)(*a*)(1); Iowa Admin. Code r. 871—24.24(15)(g) ("In determining what constitutes suitable work, the department shall consider, among other relevant factors . . . [d]istance from the available work."); *see also* Arthur M. Menard, *Refusal of Suitable Work*, 55 Yale L.J. 134, 147 (1945) (noting suitability in context of unemployment compensation "is a relative matter in which the effect of the work upon the claimant and his normal economic activity and activity in society should be considered"). Professor Larson has noted the validity of the analogy between unemployment and workers' compensation benefits on the issue of suitability, noting, "While there are not as many workers' compensation cases [on the issue of suitability of employment], they seem to resemble in general effect the more numerous unemployment compensation cases on the same point." 4 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 85.01, at 85-1 (2000).

Further, in employment discrimination cases, an employer can meet its burden of establishing the plaintiff failed to mitigate damages by showing (1) the availability of suitable jobs that the employee could have discovered and for which the employee was qualified, and (2) that the employee failed to seek such a position with reasonable care and diligence. *Sias v. City Demonstration Agency*, 588 F.2d 692, 696 (9th Cir.

1978). In *Spagnuolo v. Whirlpool Corp.*, 717 F.2d 114, 119 (4th Cir. 1983), the Fourth Circuit observed: "The long-settled rule in the labor area is that a wrongfully discharged employee need not accept, in mitigation of damages, employment that is located an unreasonable distance from his home." *See also Frye v. Memphis State Univ.*, 806 S.W.2d 170, 173 (Tenn. 1991) (stating a wrongfully terminated employee need not "abandon his home or place of residence to seek other employment" to mitigate damages).

The Restatement (Second) of Agency takes a similar approach. If an employer discharges an agent in violation of the contract of employment, the agent cannot recover for damages he could have avoided by exercising due diligence. Restatement (Second) of Agency § 455 cmt. *d*, at 373 (1958). The comments of section 455 explain that a wrongfully discharged agent is not "necessarily obliged to accept employment at a distance from his home." *Id.* The Restatement provides the following illustration:

> 3. P employs A, who is married, for a period of a year as a traveling salesman to cover New England, with headquarters at Boston. At the end of one month, without cause, P dismisses A. A is offered a position with another responsible house for the same territory but with headquarters in New York. It is a question for the triers of fact to determine whether or not in view of all the circumstances, including the social interests of A and his wife, A's damages are diminished by the amount which he would have received had he accepted the New York offer.

*Id.* § 455 illus. 3, at 373–74. As one can see, the Restatement allows the trier of fact to consider the distance of employment from one's home in determining whether the agent suffered damages he could have avoided. *See id.*; *see also Hilgendorf v. Hague*, 293 N.W.2d 272, 276–77 (Iowa 1980) (citing Restatement (Second) of Agency section 455 with approval).

We have applied the generally recognized geographic concept in employment law in other workers' compensation settings. For instance, in *Guyton v. Irving Jenson Co.*, 373 N.W.2d 101, 105 (Iowa 1985), we recognized the "odd-lot doctrine." Under the doctrine, an employee is considered to have suffered total disability if the worker can only perform work "so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist." *Guyton*, 373 N.W.2d at 105 (citation and internal quotation marks omitted). In *Guyton*, we explained:

> [W]hen a worker makes a prima facie case of total disability by producing substantial evidence that the worker is not employable *in the competitive labor market*, the burden to produce evidence of suitable employment shifts to the employer. If the employer fails to produce such evidence and the trier of fact finds the worker does fall in the odd-lot category, the worker is entitled to a finding of total disability.

*Id.* at 106 (emphasis added). "Simply put," we observed in *Second Injury Fund of Iowa v. Shank*, 516 N.W.2d 808, 815 (Iowa 1994), "the question is this: Are there jobs in the community that the employee can do for which the employee can realistically compete?" For purposes of the odd-lot doctrine, then, we have held that an employee need not look for a position outside the employee's "competitive labor market" to establish he suffers a total disability. *Id.*; *see also See v. Wash. Metro. Area Transit Auth.*, 36 F.3d 375, 381 (4th Cir. 1994) (stating "it is by now well-established that, in order to defeat a claim for benefits as a result of an alleged permanent total disability, the burden is on the employer to prove the existence of a suitable job presently available to the claimant *in the community in which he lives*" (citation and internal quotation marks omitted)); *New Orleans (Gulfwide) Stevedores v. Turner*, 661 F.2d 1031, 1042 (5th Cir. 1981) (holding "job availability" should consider whether

there are "jobs reasonably available in the community for which the claimant is able to compete"). In light of the decisions of other courts addressing similar issues, analogous statutes, and prior decisions of this court, we conclude the commissioner may consider distance of available work from the claimant's home in determining whether an employer has offered "suitable work" for purposes of Iowa Code section 85.33(3).

Given our holding on the legal issue of whether geographic proximity is a factor to be considered, we now turn to the question of whether the commissioner's factual decision that the proffered employment was not suitable is supported by substantial evidence.[2] We acknowledge that the evidence in the record could have led a reasonable fact finder to come to a conclusion different than that reached by the commission. The issue before us, however, is not whether the employer had a substantial basis for asserting the offered job was, in fact, "suitable." The question is whether the determination of the commissioner should be affirmed.

---

[2]While there is ample authority on the general issue that geographic proximity should be a factor in evaluating the "suitability" of employment offered by employers, there is little caselaw applying this general principle where an agency entitled to substantial deference in fact finding determines that an offered job is not suitable with a record similar to that developed in this case. While the dissent has found a lower court opinion from Pennsylvania in the general subject area, *Trout v. W.C.A.B.*, 836 A.2d 178 (Pa. Commw. Ct. 2003), this case is not on point. In *Trout*, the court found that the final decision of the workers' compensation authorities *denying benefits* could not be affirmed as *a matter of law. Trout*, 836 A.2d at 183–85. Footnote twelve of the opinion states that if the offer of employment is "within the geographic area where others in the same community as Claimant would accept employment, the claimant's preference is irrelevant, and the job is available geographically." *Id.* at 184 n.12. Various cases are cited in support of the proposition that the final workers' compensation decision *denying benefits* was so far out of bounds that it could not be affirmed as a matter of law. *See id. Trout*, which establishes under Pennsylvania law the outer boundaries of agency discretion in *denying a claim*, cannot be turned upside down and used as authority to establish the inner boundary of agency discretion where the agency sides with the employee and *affirms the claim*.

We conclude that the commissioner committed no legal error and that substantial evidence supports the commissioner on the issue. The distance between the proffered work and Neal's residence was 387 miles. Although Neal was an over-the-road truck driver, which often required him to spend extended periods of time away from home, Neal testified that before the injury he ordinarily spent each weekend at home with his wife and three children, and occasionally he returned home during the week. Had Neal accepted the work in Des Moines, he would have only been able to return home every other weekend—cutting his time at home in half. As observed by the commissioner, "Being away from the support of your wife and family, especially while recovering from a serious work injury, is not an insignificant matter." Further, there is no evidence in the record establishing that Neal agreed as a condition of employment to any relocation that Annett Holdings might require. *See Serwetnyk v. USAir, Inc.*, 671 N.Y.S.2d 537, 538 (App. Div. 1998). Based on the evidence, we are satisfied substantial evidence supports the commissioner's findings of fact. *See Litzinger v. W.C.A.B.*, 731 A.2d 258, 262–63 (Pa. Commw. Ct. 1999) (holding as a matter of law that light-duty work offered to former over-the-road truck driver was "totally unreasonable" when work was located 116 miles away from claimant's residence even though the employer offered to provide a motel room).

**B. Permanent Partial Disability Benefits.** In its cross-appeal, Annett Holdings argues the district court erred in upholding the commissioner's finding that Neal suffered a sixty percent permanent partial disability. The question is a mixed one of law and fact. *Larson Mfg. Co., Inc. v. Thorson*, 763 N.W.2d 842, 856 (Iowa 2009). In reviewing an agency's finding of fact for substantial evidence, courts must engage in a "fairly intensive review of the record to ensure that the fact finding is

itself reasonable." *Wal-Mart Stores, Inc. v. Caselman*, 657 N.W.2d 493, 499 (Iowa 2003). We do not, however, engage in a scrutinizing analysis, "for, if we trench in the lightest degree upon the prerogatives of the commission, one encroachment will breed another, until finally simplicity will give way to complexity, and informality to technicality." *Midwest Ambulance Serv. v. Ruud*, 754 N.W.2d 860, 866 (Iowa 2008) (citation and internal quotation marks omitted).

In our fairly intensive review, we view the record as a whole, which includes a consideration of evidence supporting the challenged finding as well as evidence detracting from it. Iowa Code § 17A.19(10)(*f*)(3); *Dawson v. Iowa Bd. of Med. Exam'rs*, 654 N.W.2d 514, 518 (Iowa 2002). Evidence is not insubstantial merely because a contrary inference is supported by the record. *Missman v. Iowa Dep't of Transp.*, 653 N.W.2d 363, 367 (Iowa 2002). Because the challenge to the agency's industrial disability determination challenges the agency's application of law to facts, we will not disrupt the agency's decision unless it is "irrational, illogical, or wholly unjustifiable." *Larson Mfg. Co., Inc.*, 763 N.W.2d at 857.

An employee who suffers a "permanent disability" is entitled to compensation. Iowa Code § 85.34. The amount of compensation for an unscheduled injury resulting in permanent partial disability is based on the employee's earning capacity. *Broadlawns Med. Ctr. v. Sanders*, 792 N.W.2d 302, 306 (Iowa 2010). Earning capacity is determined by an evaluation of several factors, including "functional disability . . . age, education, qualifications, experience, and inability to engage in similar employment." *Deutmeyer*, 789 N.W.2d at 137–38 (citation and internal quotation marks omitted). Personal characteristics of the employee that affect employability may be considered. *Ehlinger v. State*, 237 N.W.2d 784, 792 (Iowa 1976). In determining industrial disability, the

commissioner "is not required to fix disability with precise accuracy." *Myers v. F.C.A. Servs., Inc.*, 592 N.W.2d 354, 357 (Iowa 1999); *see Klein v. Furnas Elec. Co.*, 384 N.W.2d 370, 374 (Iowa 1986) (observing in some cases it is impossible to determine extent of industrial disability with precise accuracy).

The commissioner found Neal to have suffered a sixty percent industrial disability. The commissioner explained:

> Claimant is 47 years old. His age would make retraining difficult. Although Neal has minor residual discomfort, his loss of lifting capacity and formal impairment ratings show that he has quite significant industrial loss. He is unable to return to flatbed truck driving, the type of work for which he is best suited given his work history. He cannot return to any driving duties that would require heavy or medium lifting. His limitations prevent a return to construction, other than as a non-working supervisor. Considering all factors of industrial disability as set forth above, it is found that as a result of the injury sustained September 13, 2007, Tim Neal has experienced diminution of earning capacity of sixty percent (60%).

Substantial evidence supports these findings of fact.

We have previously held the age of forty-seven is a factor that the commissioner may consider in finding industrial disability. *See Trade Prof'ls, Inc. v. Shriver*, 661 N.W.2d 119, 123 (Iowa 2003) (noting claimant's age of forty-seven in concluding substantial evidence supported the commissioner's findings); *see also Second Injury Fund of Iowa v. Nelson*, 544 N.W.2d 258, 266 (Iowa 1995) (reasoning age of sixty consistent with greater disability); *Diederich v. Tri-City Ry.*, 219 Iowa 587, 594, 258 N.W. 899, 902 (1935) (stating it would be difficult for a fifty-nine-year-old person to find employment in a new field). The commissioner did not error in considering age to be a factor in this case.

As pointed out by the commissioner, Neal has limited education. The commissioner could properly consider his high school education and

lack of specialized training as a factor that could lessen his earning ability. *Deutmeyer*, 789 N.W.2d at 138 (reasoning that lack of post-high school education was a factor supporting sixty percent industrial disability).

Neal's absence from work during the healing period is a factor that could affect employability. A reasonable commissioner could conclude that many months absence from the job could be looked at with skepticism by potential employers.

There is evidence in the record tending to show that Neal is less competitive in the employment market because of his permanent injuries. Neal drove a flatbed truck for a number of years prior to his injury, but he can no longer drive a flatbed truck because he would be required to perform lifting beyond his postinjury abilities. A Functional Capacity Evaluation report, which concluded Neal's "physical capabilities and tolerances to function between the Light-Medium and Medium Categories of work," supports the commissioner's finding in this regard. Neal has medical restrictions on what he can lift. Neal also explained that, although he worked in construction before the injury, his postinjury physical limitations preclude him from engaging in any construction except as a nonworking supervisor.

There is, of course, countervailing evidence in the record. For example, evidence in the record tends to indicate that Neal may be able to continue his career as a truck driver, albeit not as a flatbed truck driver, within his physical restrictions. Nevertheless, earning capacity contemplates more than a determination of what the employee "can or cannot do." *Shank*, 516 N.W.2d at 815 (citation and internal quotation marks omitted). The inquiry requires a consideration of the employee's actual employability, namely, the extent to which jobs are available for

which Neal can realistically compete as a forty-seven year old, high-school educated person with work experience generally limited to truck driving, construction, and oil pumping when he suffers from a functional impairment of the upper extremity that restricts his employability to light-medium and medium categories of work. *See id.* Also, factual findings are not insubstantial merely because evidence supports a different conclusion or because we may have reached a different conclusion. *See Arndt v. City of Le Claire*, 728 N.W.2d 389, 393 (Iowa 2007); *Missman*, 653 N.W.2d at 367. Further, in considering findings of industrial disability, we recognize that the commissioner is routinely called upon to make such assessments and has a special expertise in the area that is entitled to respect by a reviewing court. *See Lithcote Co. v. Ballenger*, 471 N.W.2d 64, 68 (Iowa Ct. App. 1991).

The question before us is whether the evidence supports the findings the commissioner actually made. *Terwilliger v. Snap-On Tools Corp.*, 529 N.W.2d 267, 271 (Iowa 1995). We conclude that it does. We also conclude the commissioner's application of these facts to the law is not irrational, illogical, or wholly unjustifiable.

**IV. Conclusion.**

For the reasons expressed above, we conclude the commissioner did not err in finding Annett Holdings failed to offer Neal suitable work for purposes of Iowa Code section 85.33(3). We also hold the commissioner's findings of fact with respect to the extent of Neal's industrial disability are supported by substantial evidence and the commissioner's application of those facts in holding Neal suffered a sixty percent industrial disability is not irrational, illogical, or wholly

unjustifiable. We, therefore, reverse the judgment of the district court in part and affirm in part.

**AFFIRMED IN PART AND REVERSED IN PART.**

All justices concur except Cady, C.J., Waterman and Mansfield, JJ., who dissent.

**MANSFIELD, Justice (dissenting).**

I respectfully dissent. In my view, the commissioner has misapplied the law to invalidate a seemingly reasonable temporary rehabilitation and light-duty work program. That program appears well-designed to serve the needs of both an Iowa employer and its employees. Additionally, I see no basis for the commissioner's factual finding that a truck driver who has lifting restrictions but can still obtain and perform work as a truck driver has suffered a sixty percent loss of earning capacity. For these reasons, I would reverse and remand.

### I. Background.

Tim Neal, a forty-seven-year-old high school graduate who lives in southeast Illinois close to the Indiana state line, was employed by the TMC division of Annett Holdings as an over-the-road flatbed truck driver. Although Neal's driving duties took him far from home, he was able to return home on weekends. On September 13, 2007, while climbing onto a load of plywood lumber to secure a tarpaulin in southern Michigan, Neal sustained an injury to his right shoulder. He was put on certain medical restrictions and was then off work from September 14 until the beginning of October 2007.

During that time, Annett offered light-duty work that would meet Neal's medical restrictions at TMC's headquarters in Des Moines, Iowa. Annett owns a motel there and has a regular rehabilitation/light-duty work program for its drivers. As described by the commissioner:

> Annett Holdings maintains a regular physical therapist for on-site therapy, and the motel features a fitness room, examination room, and swimming pool. Drivers performing light duty work are furnished transportation home every other weekend; travel time does not count as weekend time.

Thus, under Annett's program, employees are provided transportation home at the employer's expense every other weekend, with the travel time not counting against their weekend time. Employees have the option of traveling home on the other weekends, but must do so at their own expense.

Neal initially agreed to go to Des Moines for the light-duty program. He was going to be picked up over the weekend and driven to Des Moines, but claims there was a "misunderstanding" because the driver called his cell phone rather than his home phone and his cell phone has a dead spot at home. Neal admits he never tried to contact his employer when his ride did not show up. He also admits he refused an offer of another ride to get to Des Moines. Instead, Neal went to his doctor and obtained a full release so he could return to his former job of truck driving. He performed those duties once again from early October 2007 until he had arthroscopic shoulder surgery in March 2008.

Following surgery, Neal was again offered light-duty work in Des Moines and again declined. Neal said that one of his assignments would have involved checking TMC trucks for possible safety issues, and he considered that being a "snitch." Neal also said that he wouldn't be able to see his family as much and offered several other reasons for not undertaking the light-duty job. As summarized by the commissioner, "Neal's reasons for refusing light duty work in Des Moines in March 2008 are also multiple and unclear."[3]

Neal had a second arthroscopic shoulder surgery in June 2008. He remained off work after that. The commissioner subsequently found

---

[3]Neal admitted at one point he would prefer to be home at night with his new family, including his wife (a full-time nurse) and their eighteen-month-old child. He said that he didn't "want to go on the road anymore."

that Neal attained maximum medical improvement in November 2008. In January 2009, Neal was released by his own physician to return to work with restrictions of no lifting over forty pounds from floor to waist, no lifting over fifteen pounds from floor to overhead, and no repetitive lifting of lesser weight with the right arm. Neal has a full range of motion in that arm. According to Neal's own testimony, the surgery was successful, he could perform all of his day-to-day functions with his right arm, and he could do a full 360 degree windmill with his right arm. As of the hearing in February 2009, Neal had not yet obtained new employment, although he had just begun looking.

In addition to truck driving, Neal has prior work experience in construction and as an oil field pumper. Neal admitted that he could return to oil field work or truck driving, just not flatbed truck driving. He also admitted there are many truck driving positions out there that do not involve flatbeds.

The two issues in the case are whether the light-duty job that Neal refused to perform during the healing period was "suitable work," and whether substantial evidence supports a finding that Neal now has a sixty percent industrial disability.

The deputy who heard the hearing testimony found that Neal had been offered "suitable work" and that he had a fifteen percent industrial disability. Neal timely appealed the arbitration decision. In his appeal decision, the commissioner adopted the deputy's factual findings for the most part but modified his conclusions on these two key points.[4]

---

[4]The commissioner delegated the authority to decide the appeal to another deputy.

On the suitable work issue, the commissioner cited only one reason why the offered light-duty work was not suitable—because Neal would be home every other weekend rather than every weekend.

Regarding Neal's degree of disability, the commissioner added several observations while increasing the disability percentage from fifteen to sixty percent. On that score, the deputy had written:

> Although Neal has minor residual discomfort, his loss of lifting capacity and formal impairment ratings show that he has actual industrial loss. He could continue to drive over-the-road, but realistically wishes to avoid flatbed trucks with attendant tarping duties. Neal could well still function as a construction supervisor, but probably not as a construction carpenter. Considering all factors of industrial disability as set forth above, it is found that as a result of the injury sustained September 13, 2007, Tim Neal has experienced diminution of earning capacity on the order of 15 percent of the body as a whole, or the equivalent of 75 weeks of permanent partial disability.

The commissioner concluded as follows:

> *Claimant is 47 years old. His age would make retraining difficult.* Although Neal has minor residual discomfort, his loss of lifting capacity and formal impairment ratings show that he has *quite significant* industrial loss. *He is unable to return to flatbed truck driving, the type of work for which he is best suited given his work history. He cannot return to any driving duties that would require heavy or medium lifting. His limitations prevent a return to construction, other than as a non-working supervisor.* Considering all factors of industrial disability as set forth above, it is found that as a result of the injury sustained September 13, 2007, Tim Neal has experienced diminution of earning capacity *of sixty percent (60%). This entitles claimant to 300 weeks of permanent partial disability benefits commencing on November 9, 2008.*

(Emphasis added to show modifications of the deputy's findings.)

Nonetheless, the commissioner, like the deputy, did not question Neal's ability to work as a nonflatbed truck driver. He reiterated the deputy's findings that Neal "thinks he can work as a truck driver, but not flatbed trucks, due to the necessity to climb loads to secure tarpaulins.

He has generally good use of the right arm, but has problems lifting heavy items or lifting his arm above shoulder level."

Annett petitioned for judicial review of the commissioner's award. The district court reversed the commissioner on the "suitable work" issue, but sustained his finding of sixty percent industrial disability.

## II.  The "Suitable Work" Issue.

This case initially presents the question whether an over-the-road trucking company can offer a rehabilitation/light-duty work program from a centralized location.  Although this issue has not been litigated before, it is important nonetheless.  Iowa has many trucking companies and truckers—they are a vital part of our economy and our workforce.  At the same time, the workforce of those companies may be scattered in different locales.

Unfortunately, the commissioner, the district court, and to some extent my colleagues in the majority all take an unduly formalistic approach to this issue.  Without addressing the specific circumstances of this case, the commissioner simply decided that an employee who is rehabilitating from a workplace injury should not be expected to spend any increased amount of time away from home, even on a temporary basis.  This approach makes it difficult to have a centralized program.  It also disregards the specific facts of this case, where the employee was an over-the-road trucker whose work *already* took him overnight away from home, except on weekends.

On the other hand, the district court—in my view—went too far in the opposite direction.  The district court said that any work should be deemed "suitable" if it is "consistent with the employee's disability." *See* Iowa Code § 85.33(3) (2009).  This is too narrow a construction of the word "suitable."  The statute reads: "suitable work consistent with the

employee's disability." By using this phrasing, I believe the legislature has made it a necessary, *but not sufficient,* condition that the work be consistent with the employee's disability. If the two modifiers "suitable" and "consistent with the employee's disability" meant the same thing, there would be no need to include both of them. *See* Iowa Code § 4.4(2) (setting forth a presumption that the entire statute is intended to be effective).

The foregoing reading of the law also makes sense. Geography *should* be relevant. It would be unrealistic and unfair to expect an employee to commute hundreds of miles a day, for example, to go to a temporary light-duty work assignment.

But the majority's approach is also too formalistic. The majority cites a raft of precedents. Yet all of them involve situations where the employee would have to undergo a lengthy daily commute or move permanently elsewhere. *See, e.g., Litzinger v. W.C.A.B.,* 731 A.2d 258, 262–63 (Pa. Commw. Ct. 1999) (holding it was unreasonable to require a former over-the-road truck driver to accept a $5.00 per hour permanent light-duty work assignment that would either result in a daily commute of 116 miles each way or require him to move permanently into an employer-provided motel). Those cases are not on point. Neal was not asked to do those things. To the contrary, Annett's program, as described in the record, strikes me at first blush as a reasonable way to accommodate the needs of a trucking company and an over-the-road trucker during the temporary period where the trucker is recovering from a workplace injury.[5]

---

[5]The majority relies on a number of unemployment insurance cases. Those cases involve situations where the employee was being required to take a new *permanent* job in a different community. That is a very different circumstance from the present.

I wholeheartedly agree with the majority that "geographic proximity is a factor to be considered." At the same time, it is not the *same* kind of factor in *every* employment context. By lumping together many disparate cases, which involve everything from mitigation of damages to permanent disability to unemployment compensation, my colleagues in the majority oversimplify the inquiry. Geography has a different significance in different situations. I would hold that "suitable work" for purposes of Iowa Code section 85.33(3) may require the employee to travel temporarily so long as the work is offered in good faith to meet the needs of the company and the travel is at the employer's expense.

Another Pennsylvania decision illustrates this more nuanced approach. *See Trout v. W.C.A.B.,* 836 A.2d 178 (Pa. Commw. Ct. 2003). In *Trout,* the employee—a truck driver—sustained a knee injury in the course of employment. *Id.* at 179. The employer offered her light-duty work. *Id.* For a while, she worked as a traveling field recruiter, was provided a company vehicle, and was required to visit truck stops within a 100 to 150-mile radius of her home. *Id.* This meant that the employee on occasion had to stay away from home for several nights. *Id.* at n. 3. This arrangement nonetheless was deemed by the court to be "suitable" work. *Id.* at 184 n. 12. However, after a time, the employer told the employee she would be required to work permanently out of an office 150 miles away. *Id.* at 180. This meant the employee would have to commute 300 miles a day. *Id.* The court found the new light-duty job did not constitute suitable and available work within the meaning of Pennsylvania workers' compensation law. *Id.* at 184–85. I agree with this approach and with the Pennsylvania court's distinction between the two assignments.

I would reverse and remand for the commissioner to apply the foregoing standard. Geography is relevant, but the mere fact that a temporary light-duty job may require some more travel at the employer's expense is not sufficient grounds by itself for deeming it "unsuitable." Where an Iowa employer comes up with a seemingly logical plan to give its injured employees useful tasks while helping them recover from their injuries, that plan should not be dismissed out of hand simply because it will take the employee temporarily away from home at the employer's expense.

### III.  The Sixty Percent Disability Issue.

The other issue is the percentage of disability. The majority kneads and rolls the facts of the case trying to mold some support for the commissioner's sixty percent total disability determination.[6] I believe there is none. The essential undisputed facts are: (1) Neal can no longer work at his most recent position as a flatbed truck driver; but (2) he can work as an ordinary truck driver, and there are many such jobs available. The majority refers to "countervailing evidence" but this is not a situation where the evidence is in conflict. Rather, what Neal is capable of doing and what he is not capable of doing are essentially undisputed. On this record, I cannot accept that Neal is sixty percent disabled.

The determination of industrial disability "rests on a comparison of what the injured worker could earn before the injury as compared to what the same person could earn after the injury." *Second Injury Fund of*

---

[6]One example of this is the majority's observation that "Neal's absence from work during the healing period is a factor that could affect employability." The commissioner did not cite this consideration in his ruling. In fact, Neal acknowledged in his hearing testimony that many truck driving positions were available. Moreover, as we have noted earlier, Neal was offered temporary light-duty work during the healing period and declined to accept it.

*Iowa v. Nelson*, 544 N.W.2d 258, 266 (Iowa 1995). While I could certainly affirm the deputy's finding of fifteen percent disability had the commissioner adopted it, there is no substantial evidence to support the conclusion that Neal has suffered a sixty percent loss in earning capacity because of his shoulder injury and reduced lifting capacity. *See Swiss Colony, Inc. v. Deutmeyer*, 789 N.W.2d 129, 137–38 (Iowa 2010) (noting that industrial disability is intended to measure an injured worker's lost earning capacity and finding substantial evidence to support a finding of sixty percent disability when a worker had lost his foot and lower leg in an industrial accident).

As we have said:

> Nothing in the statute supports giving the hearing officer's proposed decision elevated status when, as in the present case, the officer and the agency disagree. The statute gives the agency an unfettered right to find the facts in the first instance. It makes the hearing officer an adjunct of the agency rather than an independent decisionmaker.
>
> This does not mean a disagreement on the facts between the officer and the agency may not affect the substantiality of the evidence supporting the agency decision. When the agency decision is attacked on the substantial evidence ground in section 17A.19(8)(*f*) [now 17A.19(10)(*f*)], the district court must examine the entire record. This includes the hearing officer's decision. § 17A.12(6)(*e*) and (*f*) [now 17A.12(5)(*e*) and (*f*)].

*Iowa State Fairgrounds Sec. v. Iowa Civil Rights Comm'n*, 322 N.W.2d 293, 294–95 (Iowa 1982).

I would reverse both the district court and the commissioner on the percentage of disability and would remand for further findings by the commissioner on this subject.

Cady, C.J., and Waterman, J., join this dissent.